[No. A081830. First Dist., Div. Two. June 25, 1999.]

TRACEY HOBSON, Plaintiff and Appellant, v.
RAYCHEM CORPORATION et al., Defendants and Respondents.

## COUNSEL

Law Offices of David S. Secrest and David S. Secrest for Plaintiff and
Appellant.

Foster & Associates and Michael W. Foster for Defendants and
Respondents.

## OPINION

**LAMBDEN, J.**—In this case Tracy Hobson (appellant) claims that her
employer Raychem Corporation (Raychem) unlawfully discriminated against
her because she suffered from a particular disease specified in both her
administrative charge and in her complaint. Faced with summary judgment,
appellant claimed that her disease was related to other, previously unmen-
tioned, mental disabilities which she claimed Raychem had failed to accom-
modate. We therefore consider whether holistic theory extends to the law
and procedure pertaining to claims of discrimination based upon disability.
We conclude that the trial court correctly determined that appellant has
neither properly identified any condition qualifying as a matter of law as a
protected disability nor alleged any act of discrimination by her former
employer upon which she might base a claim. We will affirm.

### PROCEDURAL HISTORY

On November 15, 1996, appellant filed her complaint alleging two causes
of action. The first cause of action alleged discrimination based on disability,
in violation of the Fair Employment and Housing Act (Gov. Code, § 12940
et seq., hereinafter FEHA). The second cause of action alleged wrongful,
constructive, termination in violation of public policy.

Raychem received a copy of the complaint and, on Christmas Eve, 1996,
filed a petition for removal to the United States District Court. Counsel for
Raychem filed an answer on behalf of Raychem in the United States District
Court in January of 1997, and, subsequently, filed an answer on behalf of the
individual defendant Mahshid Ghaffari (Ghaffari) in the San Mateo County

Superior Court on July 18, 1997. Following a quarrelsome course of discovery, defendants filed a motion for summary judgment on August 28, 1997. The procedural events leading up to the hearing of the summary judgment motion were also contentious and are described more fully below.

Following oral argument on August 17, 1997, the court found no triable issue of fact relating to plaintiff's disability and ruled that as a matter of law plaintiff had failed to exhaust her administrative remedies by failing to initially claim any qualified mental disability, rather than the specific physical disability of ulcerative colitis alleged in her complaint. The nexus of plaintiff's factual allegations to her administrative charge and the procedural history of the case thus frames our inquiry into the correctness of the court's ruling on summary judgment.

FACTUAL BACKGROUND

Appellant began working for Raychem in January of 1989 as an administrative assistant. No issues are presented with reference to her work in her initial position of employment, which was apparently reviewed favorably by her manager in Raychem's telecom division.

In November of 1994, appellant was transferred to an administrative assistant 4 position in the purchasing division. This move was prompted by the elimination of her previous administrative assistant 3 position in the telecom division. In her new position, appellant spent her mornings working under the direction of Bill Warner (and spent her afternoons reporting to Ghaffari).

In this new position, problems arose. Appellant's opening brief contends she had received accommodations for "her acknowledged physical, emotional and mental impairments" prior to her transfer to the administrative assistant 4 position. Appellant contends that only one of her new supervisors, Warner, was willing to continue to provide such accommodations and that the other supervisor, Ghaffari, was hostile to her requests.

It is undisputed that appellant was first diagnosed with ulcerative colitis in 1984, and that she has had three bouts of the disease, also known as "inflammatory bowel disease." The first episode in 1984 lasted approximately one month and responded to treatment; the second episode occurred in May of 1994, while appellant was still working in her original administrative assistant 3 position; the third episode occurred in 1997.

In her complaint, appellant alleged that ulcerative colitis was the basis of her claim for disability discrimination as follows: "Plaintiff, at all pertinent

times, is and was an individual with a physical disability, namely ulcerative colitis. Ulcerative colitis is a chronic disease which can sometimes be fatal if untreated and which dramatically increases the risk of colon cancer." The complaint also alleged that her second colitis attack, which she suffered in 1994, required a leave of absence and that, following her return to work, her doctor requested that she be placed in a less stressful position.

Raychem stresses that appellant's deposition testimony indicates that appellant has never required any accommodation or alteration of her job duties as a result of her ulcerative colitis. Appellant testified she has never been incapable of performing any job assigned to her, and that she never informed any of her supervisors that there were certain jobs or tasks she could not perform. She does not recall missing work as a result of the colitis condition. Raychem argues that the totality of the evidence presented at the motion for summary judgment effectively shows only that appellant claims her colitis prevented her from working for Ghaffari.

Raychem also disputes appellant's claim that she "at all pertinent times, was treated and regarded as a disabled person, who, with appropriate accommodations, could perform her job functions." In fact, Raychem contends appellant has acknowledged that she was given time off for medical appointments and therapy sessions relating to emotional problems, which were later central to her declaration in opposition to the motion, but that these mental and emotional problems were not shown by appellant to qualify as disability covered by the FEHA.

On April 18, 1995, appellant filed a workers' compensation claim for work-related stress. She also filed for benefits under Raychem's disability benefits plan. In connection with her disability request, her psychiatrist described her condition as "adjustment disorder with depressed mood; work stress and relationship stress; . . . depressed, anxious." In her deposition, appellant did not recall giving any other reason to Raychem regarding her request for a leave of absence in April of 1995. Raychem stresses that appellant was not suffering from a flare-up of ulcerative colitis at the time of her leave in April of 1995.

In her deposition, appellant disclosed that she had been admitted to a hospital as a result of a failed suicide attempt two days prior to the filing of her request for a leave of absence. She said her suicide attempt resulted from a "psychotic break," and that she had attempted suicide on two previous occasions. She also admitted she has a history of alcohol and cocaine addiction, and that she had never informed Raychem of either her suicide attempt or hospitalization by the time she made her workers' compensation claim in April of 1995.

Moreover, the evidence submitted in support of the motion established, without dispute, that appellant's ulcerative colitis was then in remission. The only indication to the contrary was suggested by her visit on April 25, 1995, with her treating physician, during the course of which she said the colitis was "starting to come back" because she stopped taking Prednisone five days earlier. Her cessation of medication would have been two days after her submission of the workers' compensation claim and approximately four days after her failed suicide attempt. Appellant testified in her deposition that her colitis had been "in remission" for a period of at least one month prior to the April 25 visit to her regular internist.

Appellant was away from work until May 19, 1995, at which time she presented her supervisor Ghaffari with a letter from her psychiatrist, suggesting a connection between colitis and stress, and further suggesting that her return to work would be assisted by a less stressful environment, and that if she sought "other employment with Raychem," it would be best to reduce time pressure upon her. No other accommodations were suggested. Appellant's deposition testimony indicated that she thought stress might keep her colitis from healing. Appellant also admitted that she did not attempt to seek another position within Raychem.

After her return to work in May of 1995, appellant remained at her job for only three more weeks. There is no dispute that Ghaffari and appellant attempted to minimize contacts between them. However, appellant was distressed to learn that Ghaffari would be her full-time supervisor and was further discomforted by the "negative energy" given off by Ghaffari, who stated that "You're not doing admin Level 4 work."

Appellant met with her supervisor Ghaffari and members of Raychem's human resources staff on May 25, 1995. During the course of this meeting, appellant was criticized for absenteeism and for her inability to perform her work in a timely manner. Appellant received a copy of her supervisor's memorandum summarizing the May 25 meeting on the afternoon of June 12, 1995; and she prepared a written response, which she slid under Ghaffari's door at 5:15 p.m. before she left the office for the last time.

Appellant filed another claim for benefits under Raychem's disability plan in which she indicated "excessive stress" was the basis of her disability. Her psychiatrist prepared another physician's statement indicating that appellant was suffering from "depression and severe anxiety." Raychem points out that the claim only mentions colitis in passing and that it was not given as the reason for her leaving work. Raychem does not dispute the psychiatrist's diagnosis of total disability, but also points out that appellant did not see her

internist related to her colitis problem at any time between April 25, 1995, through June 23, 1995, which was well after the time she left her employment on June 12, 1995.

We are thus required to examine the factual underpinnings of the motion for summary judgment, and its opposition, in order to identify the basis for appellant's claim of discrimination in relation to the appropriate characterization of appellant's disability.

Appellant argues that there is essentially no difference between her physical disability: ulcerative colitis, and her mental disabilities: depression and anxiety. Raychem argues that it is undisputed that there is no mention of any specific mental disabilities, such as anxiety, depression or stress, in appellant's FEHA charge and that the only specific ailment described in the administrative claim, and in the complaint, and supported by the evidence, is ulcerative colitis, a purely "physical" ailment.

## DISCUSSION

### *Applicable Standard of Review*

A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (o)(2); *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].) ■ The trial court's summary judgment rulings are subject to de novo review. (*580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 14 [272 Cal.Rptr. 227].)

### *The Trial Court Properly Refused to Consider*
### *Late Submissions by Appellant*

■ A considerable portion of Raychem's brief is expended in fulmination over appellant's late submission of documents opposing the motion for

summary judgment. The trial court issued an order which provided in part as follows: "Plaintiff will file and serve her Opposition to Defendants' motion no later than Friday, September 19, 1997; and personally deliver a copy to Research on the second floor before 4:00 p.m." In contravention of this court's imposed deadline, appellant continued to file papers right up to the date of the hearing on October 17, 1997. These papers included declarations of good cause in support of filing additional papers as well as documents directly opposing the motion, including a supplemental declaration by appellant's attorney and additional evidence supporting the opposition to the motion. Appellant also tardily filed an additional declaration by appellant's attorney lodging certain deposition pages together with a proposed order which would have denied summary judgment.

Expressing outrage over appellant's disregard of the trial court's order setting the opposition deadline, Raychem even suggests that the "proposed order" lodged with the court on October 16, 1997, was a ". . . disguised memorandum of points and authorities in response to [Raychem's] reply." Raychem asks us, pursuant to California Rules of Court, rule 12, to strike all the late-filed opposition papers from the record on appeal.

The trial court's order granting summary judgment is somewhat ambiguous on this point. On the one hand, appellant was sanctioned $300 for failure to follow the California Rules of Court, but, on the other hand, the trial court granted Raychem's motion by stating, in part, that it had considered only "admissible and competent evidence." The trial court apparently did not rule on the "good cause" declaration filed by Mr. Secrest on October 10, 1997, in an effort to expiate the violation of the deadline.

Raychem is most exercised over excerpts from two depositions which were included in the late filed papers: one is from Raychem employee Ghaffari's deposition taken in August of 1997, and the other is from the testimony of deponent Wang that, according to Raychem, "[a]ppellant chose not to take until **six days after** the September 19 deadline for her Opposition papers." (Boldface in original.) We agree with Raychem that the general rule requires that late submission of late discovered evidence must be based upon a showing of diligence on the part of the submitting party. (*Tokai Bank of California* v. *First Pacific Bank* (1986) 186 Cal.App.3d 1664 [231 Cal.Rptr. 503]; *A & B Painting & Drywall, Inc.* v. *Superior Court* (1994) 25 Cal.App.4th 349, 356 [30 Cal.Rptr.2d 418].) We also agree that under different circumstances, and presuming a different result, the law would have required the opportunity for a continuance of the hearing in order to allow Raychem to reply to the late submitted evidence. (*G. E. Hetrick & Associates, Inc.* v. *Summit Construction & Maintenance Co.* (1992) 11

Cal.App.4th 318, 325 & fn. 4 [13 Cal.Rptr.2d 803] (*Hetrick*); *Lewinter* v. *Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1224 [32 Cal.Rptr.2d 305].) However, we are left with a record that does not disclose that appellant obtained an order from the court finding good cause to allow the late filed submissions (which is required by Code Civ. Proc., § 437c, subd. (b)). The record is somewhat ambiguous concerning what evidence the trial court actually considered.

Resort to the transcript of the hearing is helpful but does not completely dispose of the issue. At the hearing the trial judge, Linda Marino Gemello, stated as follows: "Whatever [was filed] yesterday, the Court doesn't have it and it's not considered." "No, sir, we don't take papers that are not filed on time. Those have not made it up to the Law and Motion Department, it is somewhat debatable whether your whole supplementary set of facts upon which you totally rely here is legitimately before the Court."

Raychem contends that the "notoriously tardy papers" were not considered by the trial court and concludes that if they were not considered they must be stricken from the certified record on appeal. (*Hetrick, supra,* 11 Cal.App.4th at p. 325.) However, the above quoted statement by Judge Gemello indicates only that the papers filed on October 16, 1997, were not considered, and states only the general proposition that "we don't take papers that are not filed on time." The trial court's terse order after hearing referred only to "admissible and competent evidence" and not to the specifics of what documents the court considered. While the sanctions were generally indicative of the trial court's displeasure with the late filings and arguably may have referred only to the October 16 submissions, it is clear that the court did not consider the October 16 papers. It is also apparent that some of the late filings "made it up to the Law and Motion Department" and that Judge Gemello thought it was "somewhat debatable" whether the opposition was "legitimately" before the court. We conclude that the most reasonable inference to be drawn from this record is that the trial court did not consider the papers submitted on October 16, 1997, and we will not disturb the trial court's implied ruling that good cause was not shown with reference to those papers.

However, it also appears that the trial judge did consider the papers filed on October 10, 1997, one of which was the declaration of good cause discussed in the above cited portion of the reporter's transcript. Good cause must be shown to the satisfaction of the trial court before supplemental material may be filed after the statutory deadline set forth in Code of Civil Procedure section 437c. (*Hetrick, supra,* 11 Cal.App.4th 318.) Code of Civil Procedure section 437c, subdivision (b) itself forbids the filing of any

opposition papers less than 14 days prior to the scheduled hearing, and the case law has been strict in requiring good cause to be shown before late filed papers will be accepted. The case of *Kapitanski* v. *Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 33 [193 Cal.Rptr. 839], provides an example of good cause: there counsel for the opposing party was retained only one day before the hearing on the motion for summary judgment. No such circumstance is shown by this record and we are, as always, disinclined to add further contentiousness to the burdens of motion practice in the trial courts. We can see no reason here to state an exception to the general rule, investing broad discretion in the trial courts to regulate the submission of materials in connection with pending motions.

We conclude that appellant established neither diligence nor good cause with reference to the late filing of her opposition. However, in the absence of a clear order, we also recognize the possibility that the trial court reviewed the papers filed on October 10, 1997, and will defer to the trial judge's exercise of the discretion to do so which is implied in the transcript. Accordingly, Raychem's motion to strike made under rule 12 of the California Rules of Court, is granted in part as to the two submissions dated October 16, 1997, and denied as to the two submissions filed October 10, 1997. We have considered only the latter two submissions in reaching our decision.

### The Trial Court Properly Denied Appellant's Request to Amend Her Complaint

■ Our decision on the question of appellant's request for leave to amend her complaint depends, in part, on the characterization of the proposed amendment. The complaint alleged only ulcerative colitis as her disability, but at the hearing of the motion, appellant wanted to amend to allege mental disability. Appellant argues that although a party cannot resist a summary judgment motion on a theory not pleaded in the complaint (*Roth* v. *Rhodes* (1994) 25 Cal.App.4th 530, 541 [30 Cal.Rptr.2d 706]), a party is allowed to ask the trial court to consider an issue of fact previously not pleaded. In practice, where a defect appears on the face of the complaint, a trial court may elect to treat the hearing of the summary judgment motion as a motion for judgment on the pleadings and grant the opposing party an opportunity to file an amended complaint to correct the defect. (Weil & Brown, Civil Procedure Before Trial (The Rutter Group 1997) ¶ 10:17.1.)

Appellant, relying on *FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 382 [282 Cal.Rptr. 508], also contends that ". . . defects in the pleading of ultimate facts may be remedied by resort to the parties'

statement of undisputed facts." Appellant argues that because her claim was always for disability discrimination, she not was not attempting to resist the summary judgment based on a new theory but rather only requesting leave to amend in order to "correct" the ultimate facts shown by her factual submissions in opposition to the motion. She characterizes the new material relating to mental disabilities as "additional facts supporting her existing cause of action for disability discrimination . . . ."

Raychem concedes the theoretical proposition but contends that appellant has relied on cases that do not support her contention. Raychem points out that *Kirby* v. *Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059 [14 Cal.Rptr.2d 604], cited by appellant, involved a request to amend the complaint to correct the date of discovery which ultimately formed the basis of summary judgment. Likewise, in *Williams* v. *Braslow* (1986) 179 Cal.App.3d 762 [224 Cal.Rptr. 895], also cited by appellant, the plaintiff in a medical malpractice case attempted to amend in order to correct the name of the doctor who was alleged to have performed the surgery. We agree with Raychem that the reversals in these cases, which permitted amendment, narrowly define the ambit of the rule allowing amendment where the trial court elects to treat the opposition to a motion for summary judgment as a motion for judgment on the pleadings. We conclude that the change of facts appellant proposed would have fundamentally, and impermissibly, altered her theory of recovery.

Appellant's case is distinguishable from the cases she cites not only because she was attempting to establish a different theory of recovery, but also because she failed to submit evidence that would have raised any triable issue of fact that could form the basis of liability on the part of the Raychem. (See *Bostrom* v. *County of San Bernardino* (1995) 35 Cal.App.4th 1654 [42 Cal.Rptr.2d 669]; *Hansra* v. *Superior Court* (1992) 7 Cal.App.4th 630 [9 Cal.Rptr.2d 216].) As discussed below, whether plaintiff was relying on a theory of physical disability based on her ulcerative colitis or upon her new theory of mental disability, the facts submitted in support of and in opposition to the summary judgment motion permitted the court to conclude that she would be barred as a matter of law under either theory. An appropriate analogy would be an attempt to amend a complaint, which would apparently be barred by statute of limitations, to state a new date of discovery which would also be barred by the statute of limitations.

We give little weight to appellant's contention that "Raychem acknowledged the potential application of plaintiff's mental condition as a recognized disability under the FEHA." It is evident from the record that Raychem has always contended not only that appellant has no evidence to support her

tardy claim of a qualified mental disability but also that she failed to exhaust her administrative remedies under the FEHA by failing to file a timely administrative claim identifying any mental condition as the basis for her contentions of discrimination.

Accordingly, we conclude the trial court was correct in its refusal to grant leave for appellant to amend her complaint in response to the motion for summary judgment.

### Appellant's First Cause of Action for Disability Discrimination Fails as a Matter of Law

Appellant's complaint and the underlying administrative charge allege that the disability she suffered consisted of ulcerative colitis. No other disability is alleged in the administrative charge or in the complaint. No evidence of any other administrative charge was presented at the motion for summary judgment. The evidence submitted in support of the summary judgment motion included excerpts from appellant's sworn deposition testimony which showed her ulcerative colitis condition to be insufficient to be considered a disability as a matter of law. Appellant responded by attempting to shift the focus of her disability claims to a theory of mental impairment raised for the first time in opposition to the summary judgment motion.

Under California Government Code section 12926, subdivision (k), as well as the federal statute and the Americans With Disabilities Act (ADA), a qualifying disability is defined as : "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [¶] (B) a record of such impairment; or [¶] (C) being regarded as having such an impairment." (42 U.S.C. § 12102(2); see also Cal. Code Regs., tit. 2, § 7293.6, subd. (a); 29 C.F.R. § 1630.2(j) (1998).)

In support of the summary judgment motion, Raychem's separate statement of undisputed facts established that appellant had testified that her ulcerative colitis restricted her activities at work only by the need to be "aware of where the restrooms are wherever I am." She also testified that during particular periods of her employment she was never unable to perform any job because of her colitis and that she did not require any alteration of her work environment in order to do her job because of her colitis. Moreover, her deposition indicated that during the time she was working for Ghaffari, appellant was never prevented from performing any job because of her colitis and never required any special accommodation due to her colitis.

In order to determine whether or not a disability substantially limits a major life activity, the court must examine the effect of the alleged

impairment on the life in question. (*Ferguson* v. *Western Carolina Regional Sewer Auth.* (D.S.C. 1996) 914 F.Supp. 1297, 1299.) Generally, a condition will not qualify as a disability under the definition of both the federal and California statutes unless the alleged impairments substantially limits the ability of the plaintiff to perform major life activities which includes such functions as: "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing learning, and working" (Cal. Code Regs., tit. 2, § 7293.6, subd. (e)(1)(A)(2)(a); see also 29 C.F.R. § 1630.2(i) (1998); *Hatfield* v. *Quantum Chemical Corp.* (S.D.Tex. 1996) 920 F.Supp. 108, 110).

■ Raychem contends that no reported case has concluded that colitis and related bowel diseases can constitute qualifying disabilities under either of the ADA or FEHA. In *Ferguson* v. *Western Carolina Regional Sewer Auth., supra,* 914 F.Supp. 1297, the court found that the plaintiff was not disabled under the ADA where the plaintiff suffered from several physical conditions, including "irritable bowel syndrome." In another case, *Pangalos* v. *Prudential Ins. Co.* (1996) 5 A.D. Cases 1825, it was found that severe ulcerative colitis would not qualify as a disability under the ADA. Even so, we are not required to make such specific findings relating to the particular disability suffered by appellant, because appellant's testimony indicated that she was not prevented from performing the work required by any of her positions with Raychem. In fact, the only express limitation she placed upon her own activities was that she "wouldn't want to go on a 50-mile bike ride away from an available restroom . . . ." By appellant's own assessment, her ulcerative colitis condition was not a substantial impairment under the law we must apply. (*Ferguson* v. *Western Carolina Regional Sewer Auth., supra,* 914 F.Supp. at p. 1299.)

We reach this conclusion before we even consider appellant's other contention that she was effectively prevented from performing a particular job because of the "negative" supervision of Ghaffari. The federal courts interpreting the ADA as well as all California courts which have interpreted the FEHA, have uniformly declined to extend protection to persons whose alleged disabilities rendered them unable to perform a particular job even though they might have been physically able to work in a different position. (*Maloney* v. *ANR Freight System, Inc.* (1993) 16 Cal.App.4th 1284, 1287 [20 Cal.Rptr.2d 656]; *Weiler* v. *Household Finance Corp.* (7th Cir. 1996) 101 F.3d 519.) In other words, the inability to perform one particular job, or to work under a particular supervisor, does not constitute a qualified disability. (*Thompson* v. *Holy Family Hosp.* (9th Cir. 1997) 121 F.3d 537.)

Also, appellant did not submit evidence in opposition to the summary judgment motion to contradict her own deposition testimony indicating that

she suffered only minor limitations as a result of her condition. Neither of the declarations submitted by appellant's doctors stated that appellant's functions are substantially limited by her ulcerative colitis. Rather, appellant's opposition, as well as her doctors' declarations, stressed that the condition may be precipitated by stress. Read as a whole, appellant's opposition, as well as her briefs in this court, attempt to shift the focus of her complaint to her mental condition by claiming the colitis attacks can be precipitated by mental stress. Whether or not this second condition can form the basis of a new complaint by appellant is discussed below.

We find it unnecessary to consider whether or not Raychem refused any reasonable request for accommodation of the ulcerative colitis condition because we conclude that the trial court was correct in finding that ulcerative colitis, as alleged in the administrative charge and the complaint, and assuming the factual description by appellant of such limitation to be correct, cannot on this record constitute a qualifying disability as a matter of law. Appellant effectively admitted in her sworn deposition testimony that she was not disabled by her condition during her employment by Raychem.

*Appellant Failed to Exhaust Her Administrative Remedies Regarding Any Other FEHA Claims*

Appellant's complaint in this action, as well as the underlying administrative charge, alleged her disability to be ulcerative colitis. There is no mention of any mental or emotional impairment, such as depression. However, in opposition to the summary judgment motion, appellant contended for the first time, and persists in essentially contending before us, that her ulcerative colitis was merely attendant to her true disability, which was a condition of depression and anxiety severe enough to constitute a qualifying mental disability. The trial court concluded that the complaint's failure to allege mental disability rendered it insufficient as a matter of law because it was unsupported by an appropriate administrative charge. The trial court thus found the two theories advanced by appellant to be distinct and ruled against appellant based on her failure to exhaust administrative remedies.

Appellant concedes that a party cannot successfully resist summary judgment on a theory which was not pleaded in the complaint (*Roth* v. *Rhodes, supra,* 25 Cal.App.4th at p. 541), but she contends her theory, which was disability discrimination, was the same whatever the factual basis therefore. As we discussed above, appellant contends she should have been allowed to amend her complaint, because on summary judgment defects in the pleadings of ultimate facts can be remedied by resort to the party's statement of undisputed facts (*FPI Development, Inc.* v. *Nakashima, supra,* 231

Cal.App.3d at p. 382). Appellant's argument, however, is tangential to the issue of whether or not appellant satisfied the requirement that an administrative charge be filed identifying with specificity the discrimination alleged and the facts supporting it, including the nature of the disability claimed. The purpose of the charge is to supply fair notice of the facts, sufficient to permit investigation. (*Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1728 [35 Cal.Rptr.2d 181].)

The cases cited by appellant cannot be analogized to this case and actually illustrate the necessity for an adequate administrative claim. In *Baker* v. *Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057 [257 Cal.Rptr. 768] (*Baker*), the plaintiff's theory was that he had suffered discrimination based on race. In his civil complaint, he alleged new and specific examples of such discrimination, and the defendant contended that the basis of his complaint had changed. Not so, said the trial court, which held that the general allegation of the discriminatory basis was sufficient to permit a more complete listing of discriminatory conduct in the complaint. (*Id.* at p. 1065.) Likewise in *Sandhu* v. *Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846 [31 Cal.Rptr.2d 617] (*Sandhu*), the plaintiff alleged discrimination based on age and race. The court rejected the contention that his failure to specify his national origin discrimination, as opposed to race, would bar his claim. The court considered the distinction to be inconsequential in view of the essentially fair notice given by the administrative charge. In contrast, the disability this appellant claimed to have suffered is integral to the claim of discrimination and must be therefore have been specifically set forth. This is because, unlike racial discrimination, which can take many forms, the allegation of "failure to accommodate" must relate to a particular disability in order to have any meaning.

Appellant by necessity contends that her depression, drug dependency, mental impairment and alcoholism were all related to her claim of physical disability. Her theory is apparently that her bouts of colitis may have been brought on by stress and that the stress was also related to her drug addiction, alcoholism and suicidal depression. She argues that the variation between her administrative charge describing physical disability and the mental disability she later claimed was inconsequential because they were aspects of the same condition. Accordingly, she should have been allowed to proceed because the differences in her facts were analogous to the variations discussed in *Baker, supra,* 209 Cal.App.3d 1057 and in *Sandhu, supra,* 26 Cal.App.4th 846. If we were to allow the linkage of symptoms in this fashion, acknowledging that the human organism functions as a complex whole composed of many parts, it would effectively obviate the law's requirement that the administrative charge provide fair notice of the facts. Virtually any claim of "stress" would suffice.

The case principally relied upon by appellant, *Okoli* v. *Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607 [43 Cal.Rptr.2d 57] (*Okoli*) does not support appellant's position. In *Okoli,* the Sixth District pointed out that the purpose of the administrative proceeding is to permit investigation of the alleged discrimination. Appellant's administrative charge mentioned only colitis, but her later deposition testimony was that her leave in June of 1995, was due to "my colitis, due to work-related stress . . . [due to] depression." Counsel for appellant himself conceded that he did not know his client was suffering from the newly asserted mental condition until after the complaint was filed. Nothing in the charge could thus have reasonably been expected to lead to an investigation of whether the colitis was accompanied by or was merely a symptom of some other disability. Also, until the nature of her claimed disability was known, it would have been impossible to discern what reasonable accommodations she might have required and whether such accommodations had, in fact, been denied. We are satisfied that the trial court correctly concluded that an investigation of her claim of discrimination based on ulcerative colitis would not have reasonably included an investigation of other unspecified, and only arguably related, mental disabilities.

The law is quite clear that if an employee fails to file an administrative charge specifically identifying the alleged discrimination, and within one year of its occurrence, the subsequent lawsuit will be barred. (Gov. Code, § 12960; *Okoli, supra,* 36 Cal.App.4th at p. 1617.) It is undisputed that appellant did not file an administrative charge alleging any instance of discrimination based on a theory of mental disability caused by depression, stress or alcoholism.[1] Likewise, it is undisputed that the sole claim alleged in the complaint filed in this action was for discrimination based on the physical condition of ulcerative colitis. The record discloses that the alleged incidents of mental impairment were distinct from her colitis condition and that the theory of her claim did in fact shift by the time summary judgment was threatened. On this basis alone, summary judgment was properly granted, because appellant's complaint was not supported by the required specific administrative charge. (*Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108 [228 Cal.Rptr. 591]; *Okoli, supra,* 36 Cal.App.4th at p. 1617; *Martin* v. *Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th 1718; see also *Keiffer* v. *Bechtel Corp.* (1998) 65 Cal.App.4th 893, 897 [76 Cal.Rptr.2d 827].)

---

[1]Appellant does not deny that her problems are related to her history of using illegal drugs. The law expressly prohibits disability claims based on "unlawful use of controlled substances or other drugs." (Gov. Code, § 12926, subds. (i) & (k); Cal. Code Regs., tit. 2, § 7293.6, subd. (d).)

*Summary Judgment Was Appropriate on Plaintiff's Second Claim for
Wrongful Termination in Violation of Public Policy*

■ Raychem concedes that a claim for wrongful termination in violation of public policy does not require the exhaustion of administrative remedies. A claim for wrongful termination in violation of public policy requires only a termination "in retaliation for engaging in an activity protected by public policy." The activity must be based on a statutory or constitutional right. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].) Raychem does contend, however, that appellant's claim for wrongful termination in violation of public policy cannot be based on evidence which is insufficient to establish the violation of a right based in public policy, whether or not appellant may also proceed on a FEHA claim.

Raychem contends appellant is barred on two grounds: First, that appellant has established neither a qualified disability nor any failure of accommodation which would support the public policy violation claim, and, secondly, that appellant's claim of constructive discharge was insufficient. In view of our initial conclusion, discussed above, that the trial court was correct in concluding that no qualifying disability could be established by appellant on the undisputed facts, we need not consider the second contention. Even if the alleged mental disability were separately regarded (which directly contradicts appellant's theory of her case) there is no evidence rising to the level of any permissible inference of retaliation.

We also reject appellant's argument that the trial court erred in granting summary judgment because the second cause of action required a separate determination achievable only through the procedure of a separate motion for summary adjudication. The trial court's conclusion that appellant had produced neither any evidence to establish a qualifying disability nor any evidence of any refusal of accommodation left the appellant's complaint devoid of any statutory or constitutional basis for her claim of a public policy violation. Under these circumstances a separate motion was not required.

*Plaintiff Has No Claim Against the Individual Under the Supreme Court's
Ruling in Reno v. Baird*

■ Appellant has no claim against the individual supervisor Ghaffari. This court is well aware that an individual supervisor may not be personally liable under the FEHA for discrimination related to personnel decisions. (*Reno* v. *Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333]; *Janken* v. *GM Hughes Electronics* (1996) 46 Cal.App.4th 55 [53 Cal.Rptr.2d 741].) Ghaffari was not a proper defendant as a matter of law.

## CONCLUSION

The judgment is affirmed and costs are awarded to Raychem.

Kline, P. J., and Ruvolo, J., concurred.