**Keith STEPHENSON, Plaintiff–Appellant,**

v.

**UNITED AIRLINES, INC., Defendant–Appellee.**

No. 00–15386.

D.C. No. CV–97–4476 CAL/BZ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2001.

Decided May 30, 2001.

Before NOONAN and SILVERMAN, Circuit Judges, and SEDWICK, District Judge.[1]

1. The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

## MEMORANDUM [2]

Keith Stephenson ("Stephenson") appeals the district court's order dismissing his claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq* . ("Title VII"), and the California Fair Employment and Housing Act, Cal. Gov.Code § 12940 *et seq.* ("FEHA"), and granting United Air Lines, Inc. ("UAL") summary judgment. We affirm in part, reverse in part, and remand for further proceedings. The parties are familiar with the facts, and, therefore, we only discuss those germane to our analysis.

We have jurisdiction under 28 U.S.C. § 1291. Summary judgment is reviewed *de novo.* See *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). This court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact precluding summary judgment, and whether the district court correctly applied the relevant substantive law. *See id.*

 UAL argues that Stephenson failed to exhaust his administrative remedies. *See* 42 U.S.C. § 12117(a) (Supp. V 1993). We disagree. The district court must examine both the EEOC charge and the EEOC investigation to determine if claims are exhausted. *See EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994). "The EEOC charge must be construed 'with the utmost liberality.'" *Deppe v. United Airlines,* 217 F.3d 1262, 1267 (9th Cir.2000) (quoting *Farmer Bros.,* 31 F.3d 891 at 899). Exhausted claims include those actually investigated as well as those

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

which "would have been within the scope of a 'reasonably thorough investigation.'" *Farmer Bros.*, 31 F.3d at 899 n. 5 (citing and quoting *Gibbs v. Pierce County Law Enforcement Support*, 785 F.2d 1396, 1400 (9th Cir.1986)). This includes "new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973); *see also Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1082 (9th Cir.2000) (applying principles in analogous FEHA context).

■ Here, the district court never examined the EEOC charge and corresponding investigation to determine whether claims were exhausted. The district court simply concluded that Stephenson could not base any claim on allegations not specifically included in his EEOC charge. The district court erred. The claims Stephenson raised before the district court are "like or reasonably related" to allegations made in his previous EEOC charge. *Anderson v. Reno*, 190 F.3d 930, 935 (9th Cir.1999) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). Stephenson suffers from ankylosing spondylitis, a degenerative form of arthritis. He underwent hip replacement surgery in October 1994. Stephenson's doctor released him for work on March 17, 1995, with significant physical restrictions that included no standing, walking, driving, lifting or carrying weights exceeding 25 pounds, only occasional lifting of weights between 11 and 25 pounds, and only occasional kneeling and climbing.[3] Stephenson requested light duty. UAL denied him light or modified duty because its then-existing policy prohibited light or modified duty for non-occupational illnesses or injuries. Stephenson's EEOC charge and the corresponding investigation addressed his disability leave, hip replacement surgery, degenerative arthritis, and physical restrictions which were all related to his arthritic condition. In short, the arguments Stephenson raised before the district court are like or reasonably related to the allegations in his EEOC charge. Similarly, Stephenson's claims alleging ongoing disability for acts occurring after December 1995 are like or reasonably related to his EEOC charge. Stephenson's ongoing disability claims include allegations that UAL retaliated against him by transferring him to a different department in March 1996, and that UAL has continued to fail to accommodate him since he returned to work in December 1995. All claims arise from Stephenson's arthritic condition. All claims implicate UAL's policies. Retaliation claims are often based on underlying discrimination charges. *See Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir.1991); *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir.1982). Stephenson exhausted his claims.[4]

---

**3.** *See* Appellant Stephenson's Excerpts of Record, vol. III at 621 (hereafter "ER vol. ___ at ___."). It is not ordinarily necessary to supply citations for undisputed facts otherwise known to the parties, but a few citations are appropriate under the circumstances of this case.

**4.** UAL relies on inapposite authority, *Hobson v. Raychem Corp.*, 73 Cal.App.4th 614, 86 Cal.Rptr.2d 497 (1999) and *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351 (9th Cir. 1996). *Hobson* involved two entirely different conditions, a physical impairment (ulcerative colitis) and mental impairments (stress and depression). Hobson's alleged stress and depression were never addressed during administrative proceedings. *See Hobson*, 73 Cal.App.4th at 629, 86 Cal.Rptr.2d at 507. In *Sanders*, the plaintiff "conceded at oral argument ... that his cancer and psychological impairment were two distinct alleged disabilities." *Sanders*, 91 F.3d at 1353. Thus, neither *Hobson* nor *Sanders* disturbs our conclusion that Stephenson exhausted his administrative remedies.

Turning to the merits, Stephenson alleges that UAL violated the ADA and FEHA by failing to reasonably accommodate him when he returned to work in March 1995 after his right hip replacement surgery, by failing to reasonably accommodate him after he returned to work in December 1995, and by retaliating against him in March 1996 when it transferred him to a different department. We deem this last issue waived and only address the first two.[5]

Title I of the ADA prohibits employers from discriminating against qualified individuals with disabilities. *See* 42 U.S.C. § 12112(a) (Supp. V 1993). A "qualified individual with a disability is an individual with a disability who can perform the essential functions of a job with or without a reasonable accommodation." 42 U.S.C. § 12111(8) (Supp. V 1993). A disability includes, in part, a physical or mental impairment that substantially limits a major life activity. *See* 42 U.S.C. § 12102(2)(A) (Supp. V 1993). EEOC's regulations define "physical impairment" as including, in relevant part, "[a]ny physiological disorder, or condition, ... affecting one or more of the following body systems: neurological, musculoskeletal, ...." 29 C.F.R. § 1630.2(h)(1)(2000).

Determining whether Stephenson was a qualified individual with a disability entails a two-part inquiry: (1) was he disabled?; and (2) was he capable of performing the essential functions of his job with or without a reasonable accommodation? *See* 42 U.S.C. § 12111(8) (Supp. V 1993). A

three-part test is used to determine whether one is disabled for purposes of the ADA: (1) is there a physical or mental impairment?; (2) is there a major life activity?; and (3) does the impairment substantially limit the major life activity? *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). For present purposes, we identify Stephenson's arthritic condition as the relevant physical impairment, and "walking" as the major life activity at issue.[6]

■ The ADA mandates an individualized inquiry to determine whether an employee is disabled. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Whether or not a reasonable accommodation is necessary also requires an individualized inquiry. *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1111–14 (9th Cir.2000) (en banc), *cert. granted,* — U.S. —, 121 S.Ct. 1600, — L.Ed.2d— (2001). The employer is obligated to engage in an interactive process with employees when an employee requests an accommodation or if the employer recognizes that an accommodation is necessary. *See Barnett,* 228 F.3d at 1112. The employee's request need not take any particular form or invoke magic words to be effective. *See id.*

■ The present record affords us no basis for concluding that an individualized inquiry was conducted to determine whether or not Stephenson was disabled. The district court appears to have conclud-

---

5. Stephenson waived his claim that UAL retaliated against him in March 1996 by transferring him to another department because he never argued this issue in his opening brief. *See Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1110 n. 1 (9th Cir.2000) (en banc), *cert. granted,* — U.S. —, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001).

6. We address "walking" as the major life activity because this was the major life activity

identified by the EEOC and addressed by the district court. By mis-applying exhaustion principles, the district court foreclosed all inquiry into impairments or major life activities not specifically alleged in Stephenson's EEOC charge. Whether other impairments or major life activities might be at issue should be resolved by the district court on remand applying the appropriate exhaustion analysis.

ed that, under *Sutton,* Stephenson's hip replacement surgery in October 1994 was a mitigating measure that obviated the need for further inquiry. *Sutton* holds that mitigating measures should be taken into account when determining whether or not an individual is substantially limited in performing a major life activity. *See Sutton,* 527 U.S. at 482, 119 S.Ct. 2139. *Sutton* does not hold that mitigating measures preclude further inquiry. Indeed, the Court took pains to emphasize that, in some situations, mitigating measures might have adverse side effects. *Id.* at 484, 119 S.Ct. 2139. The fact that Stephenson received a prosthetic hip in October 1994 does not mean that he was not substantially limited in the major life activity of walking in March 1995. Even with the prosthetic hip, Stephenson returned to work on March 17, 1995, in considerable pain and with the significant physical restrictions previously discussed which included, *inter alia,* no standing and no walking. The district court neglected to consider Stephenson's actual physical restrictions in March 1995.

UAL argues that Stephenson's surgery "cured any substantial impairment in walking [Stephenson] may previously have had," [7] and that, consequently, Stephenson "was not disabled as of March 20, 1995 as a matter of law, and was not entitled to reasonable accommodation." [8] The citation relied upon by UAL pertains to Stephenson's September 30, 1998 deposition and his then-existing condition.[9] By September 1998, Stephenson had undergone

additional surgery to replace his left hip. The evidence relied upon by UAL, however, does not address Stephenson's condition in March 1995 following replacement of his right hip as UAL implies. Disability is evaluated in context in terms of the actual and present limitations affecting individuals. *See Sutton,* 527 U.S. at 481–83, 119 S.Ct. 2139.

We recognize that UAL had Stephenson examined by a nurse practitioner three days after Stephenson's doctor had examined him and imposed the physical restrictions previously discussed. The present record does not address the purpose of the nurse's examination. It is not clear whether the nurse examined Stephenson for purposes of rebutting the examination conducted by Stephenson's doctor or to support that examination or for some other reason. In context, of course, the nurse's examination meant nothing because of UAL's then-existing policy which prohibited light or modified duty for non-occupational injuries. Regardless, the nurse's notes shed no light on Stephenson's abilities under the ADA.[10]

It is not clear whether Stephenson's restrictions were temporary or permanent. Temporary, non-chronic impairments with no long-term impact are not generally considered substantially limiting. *See Sanders v. Arneson Prod., Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996). Degenerative arthritis that did not prevent Stephenson from walking—that was merely potential in its long rum effect—would not qualify as a

---

7. UAL's Response (Red) Brief at 15.

8. *Id.*

9. *See id.* (citing UAL's Supplemental Excerpts of Record, vol. I at 289–90) (hereafter "SER vol. ___ at ___.").

10. The notes recorded by UAL's nurse reflect that Stephenson had degenerative arthritis,

had undergone hip replacement surgery, and was walking with a limp. *See* ER vol. II at 458. UAL asserts that "It is undisputed that [Stephenson] suffered from no noticeable limp or pain in walking when he asked to return to work with a heavy-lifting restriction [on March 20, 1995]." UAL's Response (Red) Brief at 44. UAL cites no support for this "undisputed" fact, and none appears on the record.

physical impairment substantially limiting a major life activity. It is not clear from this record whether Stephenson presented to UAL a condition in March 1995 or December 1995 that went beyond potential permanent disability. UAL argues that Stephenson's physical impairments were only temporary in March 1995. Stephenson submitted a declaration to the district court which contended that he would have been able to return to work in March 1995 with the lifting restrictions imposed by UAL's medical department.[11] However, Stephenson's somewhat ambiguous declaration merely conforms to the basic test of a qualified individual with a disability; that is, he attested to his ability to perform the essential functions of his job with a reasonable accommodation. Moreover, Stephenson never addressed his walking. UAL classified Stephenson as being temporarily disabled. But our precedent establishes that a classification of temporary disability does not preclude ADA claims. *See Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999). Thus, the mere fact that someone would have classified Stephenson as temporarily disabled for unspecified reasons (whether for disability benefits, workers' compensation, or some other purpose) would not and does not foreclose all further inquiry under the ADA.[12] Stephenson's ADA claims would not be precluded even if he declared that he was temporarily disabled. *Cf. Nunes,* 164 F.3d at 1246.

In short, there is nothing in the existing record which establishes that Stephenson's physical restrictions were temporary or non-chronic as a matter of law when he returned to work in March 1995. Indeed, he shortly underwent additional surgery and never returned to work until December 1995. Assuming all facts and inferences in Stephenson's favor, as this court must, genuine issues of material fact exist concerning whether or not Stephenson was substantially limited in the major life activity of walking when he returned to work in March 1995.

The preceding conclusion does not compel remand. UAL would only be required to accommodate Stephenson if he was a qualified individual with a disability; that is, if he was (1) disabled and (2) capable of performing the essential functions of his job with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8) (Supp. V 1993); *Echazabal v. Chevron USA, Inc.,* 226 F.3d 1063, 1070 (9th Cir.2000), *petition for cert. filed,* 69 U.S.L.W. 3619 (March 9, 2001) (No. 00–1406).

The present record has not been adequately developed concerning how Stephenson's alleged disability related to the essential functions of his job. However, assuming that Stephenson was capable of performing the essential functions of his job with or without a reasonable accommodation, neither UAL nor the district court determined whether or not a reasonable accommodation was possible. Instead, UAL relied upon a *per se* policy prohibiting light or modified duty for non-occupational illnesses or injuries as justification for not conducting an interactive individualized inquiry into the facts of Stephenson's case. Our precedent establishes that employers must engage in an interactive, individualized dialogue with employees to identify potential options which might serve as a reasonable accommodation. *See Barnett,* 228 F.3d at 1111–14; *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1137–39 (9th Cir.2001); *Nunes,* 164 F.3d at 1247. Furthermore, this court's recent en banc opinion in *Barnett* instructs that em-

---

**11.** *See* ER vol. I at 109, ¶ 13.

**12.** Else, employers could foreclose claims through unilaterally classifying disabled employees as temporarily disabled.

ployers may not unilaterally adopt or apply policies in a manner that circumvents their obligations under law. *See Barnett,* 228 F.3d at 1116–20;[13] *see also McGregor v. Nat'l R.R. Passenger Corp.,* 187 F.3d 1113, 1116 (9th Cir.1999) (*per se* policies prohibiting return to work unless employee is completely healed violate the ADA). We have emphasized that "neither [employer nor employee] can delay or obstruct the [interactive] process [mandated by law]." *Barnett,* 228 F.3d at 1115 (citations omitted). "A per se bar conflicts with the basic premise of the ADA, which grounds accommodation in the individualized needs of the disabled employee and the specific burdens which such accommodation places on an employer."*Id.* at 1120.

■ Whether a reasonable accommodation was possible absent undue hardship implicates separate questions. We acknowledge that employers need not create special light duty positions or comparable work for the purpose of accommodating qualified individuals with disabilities. *See Cravens v. Blue Cross and Blue Shield of Kansas City,* 214 F.3d 1011, 1019 (8th Cir.2000); *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1170 (10th Cir.1999) (en banc); *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1305 (D.C.Cir.1998) (en banc);

*Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633 (7th Cir.1998); *Terrell v. USAir,* 132 F.3d 621, 626 (11th Cir.1998) .[14] However, employers may not apply policies in a manner that discriminates against individuals otherwise qualified as disabled under the ADA. *See* 42 U.S.C. § 12112(a) (Supp. V 1993).[15] The present record is not clear regarding whether or not a reasonable accommodation would have been possible. Stephenson's supervisor, Edwin P. Wilson, testified that the only reason Stephenson was not placed on light duty was because his illness or injury was not work-related.[16] However, Wilson also appeared to suggest that there were no light or modified duty positions available when Stephenson returned in March 1995.[17] These issues should be explored on remand along with any other relevant issues bearing upon the subject of reasonable accommodation.

Genuine issues of material fact also preclude summary judgment for UAL with respect to Stephenson's claim that he has been subjected to ongoing disability discrimination after he returned to work in December 1995. Employers have a continuing obligation to accommodate employees with covered disabilities. *See Humphrey,* 239 F.3d at 1138. This continuing duty does not depend upon requests from

---

**13.** We have recognized certain instances, not applicable here, where *per se* rules may exempt employers from reasonably accommodating employees. *See Willis v. Pac. Mar. Ass'n,* 244 F.3d 675, 680–81 (9th Cir.2001) (holding that "an accommodation that requires an employer to violate a [collective bargaining agreement's] seniority system is ... unreasonable *per se.*"). The present record affords no basis for concluding that UAL's policy was enacted as part of a collective bargaining agreement. Indeed, the fact that UAL unilaterally revised the policy between August and December 1995 when a new human resources director assumed duties would suggest that the policy was not. However, the parties and district court may resolve this on remand should it prove necessary.

**14.** Judge Trott's dissent in *Barnett* implies that the majority's holding erodes this principle. *See Barnett,* 228 F.3d at 1126–27 (Trott, J., dissenting). We need not resolve this issue.

**15.** UAL's argument that its light or modified duty was non-discriminatory because it applied equally to all employees neglects to consider its duties under the ADA. An employer may not unilaterally adopt a policy exempting it from its obligations under the ADA even if the policy is otherwise uniformly applied to all employees. *See Barnett,* 228 F.3d at 1116–20.

**16.** *See* ER vol. I at 34, ll. 1–10.

**17.** *See id.,* vol. I at 33, ll. 23–24.

a disabled employee. *See id.* Instead, the continuing duty is also triggered "where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.*

Here, Stephenson's doctor released Stephenson to work in December 1995 with no significant restrictions. However, the record establishes that Stephenson's condition soon worsened, and he subsequently took frequent medical leaves.[18] Some of Stephenson's medical leaves may not have been related to the pertinent medical condition. Regardless, Stephenson requested light or modified duty at least three times: (1) when he returned to work in March 1995; (2) when he returned to work in December 1995; and (3) again at some subsequent point which the parties have not precisely identified.[19] UAL's reasonable accommodation committee eventually contacted Stephenson in August 1999, but it is not clear what happened. In any event, UAL knew that Stephenson suffered from ankylosing spondylitis no later than August 1995,[20] and perhaps earlier than that. Furthermore, in March 1999, a medical doctor working for UAL concluded that Stephenson had "chronic recurring arthritis and will lose time periodically." [21] UAL's doctor observed that Stephenson had several long-term physical restrictions limiting his ability to bend, stoop, kneel, and lift heavy objects. Based on his deposition testimony that, by September 30, 1998, the only problem he experienced with walking was limping,[22] Stephenson would probably not be substantially limited in the major life activity of walking—at least as of that date. However, Stephenson has submitted evidence that UAL knew he was experiencing problems as a result of his ankylosing arthritis.[23] Based on Stephenson's medical condition, the physical restrictions placed on his ability to work, and his frequent medical absences, there is at least a genuine issue of material fact concerning whether or not UAL was "aware that the initial accommodation is failing and further accommodation is needed." *Humphrey,* 239 F.3d at 1138.[24]

Assuming all facts and inferences in Stephenson's favor, genuine issues of material

---

18. *See id.,* vol. I at 109, ll. 23–28; 110, ll. 1–7; *see also id.,* vol. II at 498–500, 515–19, 521–22, 524.

19. *See id.,* vol. II at 535 (August 12, 1999 letter from UAL to Stephenson confirming receipt of a request he made for a reasonable accommodation and scheduling a meeting to discuss his request). UAL asserts that Stephenson never requested another reasonable accommodation after March 1995. *See* UAL's Response (Red) Brief at 33. But this is factually erroneous and legally irrelevant. *See Humphrey,* 239 F.3d at 1138.

20. *See* ER vol. II at 529.

21. *Id.,* vol. II at 507.

22. *See* SER 289–90.

23. *See* ER vol. I at 109, ll. 26–28, 110, ll. 1–12; *see also id.,* vol. II at 498–500, 506, 507–08, 516, 519, 522.

24. The parties have spent much energy arguing about the admissibility of medical opinions proffered by Dr. Robert Goldfien on Stephenson's behalf. These arguments were raised before the district court, but it never ruled on the issue. On remand, the district court may re-visit this subject. For our purposes, it does not matter whether Dr. Goldfien's opinions were admissible or not. The significant physical restrictions which Dr. Brown placed on Stephenson in March 1995 establish that there are genuine issues of material fact regarding Stephenson's disabled status at that time, and the medical notes and conclusions recorded by Dr. Jensen and others in UAL's own medical department establish that there are genuine issues of material fact regarding Stephenson's disabled status after he returned to work in December 1995.

fact exist concerning whether or not Stephenson was disabled for purposes of the ADA in March 1995, whether or not Stephenson was capable of performing the essential functions of his job in March 1995 with or without a reasonable accommodation, whether or not UAL failed to reasonably accommodate Stephenson in March 1995, and whether or not UAL failed to reasonably accommodate Stephenson after he returned to work in December 1995. These issues must be remanded to the district court for development of a factual record and appropriate analysis.[25] On remand, the district court should re-analyze issues pertaining to exhaustion of claims and address Stephenson's claims in light of principles discussed in *Sutton,* 527 U.S. at 482–84, 119 S.Ct. 2139, *Humphrey,* 239 F.3d at 1137–38 and *Barnett,* 228 F.3d at 1112. We emphasize that, in remanding on these issues, we express no opinion as to the merits (or lack thereof) of Stephenson's ADA claims.

■ Finally, Stephenson alleges that UAL violated Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") by permitting a Caucasian employee, Wayne Willing, to return to work on light duty status following hip replacement surgery for a non-occupational or non-industrial injury. However, both Willing and Willing's supervisor testified that Willing neither sought nor received a light duty assignment. Stephenson never rebutted their respective testimony. The attendance records Stephenson relies upon do not create a genuine issue of material fact. Lorna Palstra, the person responsible for those records, testified to their unreliable nature. *Cf. Broussard v. Univ.*

*of Cal., Berkeley,* 192 F.3d 1252, 1258–59 (9th Cir.1999) (credible evidence required to establish a genuine issue of material fact). Stephenson failed to establish that a similarly situated employee outside the protected class received more favorable treatment. *See Chuang v. Univ. of Cal., Davis,* 225 F.3d 1115, 1123 (9th Cir.2000) (discussing elements necessary to establish a *prima facie* case of disparate treatment). The district court therefore appropriately dismissed Stephenson's Title VII claim.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion. Each party shall bear its own costs of appeal.

---

**25.** It is not necessary to address Stephenson's contention that FEHA applies a broader definition of disability than does the ADA. This argument was never adequately briefed or argued before the district court. In fact, during oral argument before the district court, Stephenson's counsel conceded that his client would have to establish that he was substantially limited to prevail on his disability claim. Stephenson's argument that he would be disabled under FEHA even if he was not disabled for purposes of the ADA was therefore waived. *See Crawford v. Lungren,* 96 F.3d 380, 389 n. 6 (9th Cir.1996).