[No. C032865. Third Dist. Oct. 25, 2001.]

TERI LEWIS et al., Plaintiffs and Appellants, v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents.

**COUNSEL**

Baum, Hedlund, Guilford & Schiavo; Baum, Hedlund, Aristei, Guilford & Downey, J. Clark Aristei and Paul J. Hedlund for Plaintiffs and Appellants.

Porter, Scott, Weiberg & Delehant, Terence J. Cassidy and Kristina M. Hall for Defendants and Respondents.

**OPINION**

**SCOTLAND, P. J.**—Vehicle Code section 17004.7 (hereafter section 17004.7) provides that, when a law enforcement agency adopts a written policy on vehicular pursuits which complies with statutory requirements, the agency is immune from liability for civil damages "resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle."

In this wrongful death action brought by Teri and Thomas Lewis (plaintiffs), representatives of the estate of their son, Philip Lewis (Lewis), plaintiffs appeal from the judgment entered in favor of the County of Sacramento and the Sacramento County Sheriff's Department (defendants). Lewis, the passenger on a motorcycle being pursued by peace officers employed by defendants, was killed during the pursuit when he jumped off or fell off of the motorcycle as it crashed to the ground and he was struck by the pursuing patrol car. The trial court entered judgment for defendants, finding that the action is barred by the statutory immunity set forth in section 17004.7.

According to plaintiffs, immunity does not apply because Lewis's fatal injuries were caused by his being struck by a peace officer's vehicle, not by a collision of a vehicle operated by a suspected criminal being pursued by a peace officer. We disagree. As we will explain, when the fleeing suspect's motorcycle crashed to the ground during the pursuit, it was involved in a "collision" within the meaning of the immunity statute. Under the plain meaning of the statute, when, as in this case, a vehicle being driven by a pursuing peace officer hits and kills a person who is involved in a collision of the suspect's vehicle in the path of the officer's vehicle, this constitutes a death "resulting from the collision" of the fleeing suspect's vehicle.

Hence, the trial court correctly concluded that section 17004.7 immunity applies, and we shall affirm the judgment.

FACTS AND PROCEDURAL HISTORY

A

Neither party has provided an adequate statement of the facts.

Plaintiffs simply recite the facts as set forth by the United States Court of Appeals, Ninth Circuit, in a related federal case involving a claim under 42 United States Code section 1983 for a violation of Lewis's federal civil rights. (*Lewis v. Sacramento County* (9th Cir. 1996) 98 F.3d 434, revd. *County of Sacramento v. Lewis* (1998) 523 U.S. 833 [118 S.Ct. 1708, 140 L.Ed.2d 1043].) ■ However, because we are reviewing a motion for summary judgment, the relevant facts are limited to those set forth in the parties' statements of undisputed facts, supported by affidavits and declarations, filed in support of and opposition to the motion in the present case, to the extent those facts have evidentiary support. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1006-1007 [48 Cal.Rptr.2d 174]; *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30 [21 Cal.Rptr.2d 104].) Facts not contained in the separate statements do not exist. (*North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 31.) Furthermore, the facts recited by the Court of Appeals, Ninth Circuit, are irrelevant because plaintiffs have not established that the evidence presented to the federal court was identical to that presented in the present case, or that the same factual issues were litigated such that the Ninth Circuit's factual "findings" are binding. The Ninth Circuit declined to rule on the potential liability of defendants under state law, dismissing the tort claims against defendants without prejudice to refiling the claims in state court. (*County of Sacramento v. Lewis, supra,* 523 U.S. at p. 837, fn. 1 [118 S.Ct. at p. 1712, 140 L.Ed.2d at p. 1052].)

■ Defendants point out plaintiffs' omission, but are equally remiss themselves. They set forth nine and a half pages of facts without any citation to the record, other than a footnote noting their statement of facts is based upon their summary judgment motion, followed by a citation to more than 200 pages of the record wherein the motion may be found. This is grossly inadequate and violates established rules of appellate procedure, which require that all assertions of fact be supported by citations to the record. (Cal. Rules of Court, rules 13, 15.) This requirement is not satisfied by one citation to more than 200 pages of the record following several pages of facts. (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401].)

Despite their own deficient statement of the facts, plaintiffs have the chutzpah to complain about, and ask us to strike, defendants' statement of facts. We were tempted to strike both parties' briefs (Cal. Rules of Court, rule 18) and compel them to start over. But rather than further delay the resolution of this appeal, we have decided to deny the request to strike. Instead, we will simply disregard the defects in both parties' briefs. (*Ibid.*)

We note, however, that defective statements of fact appear too frequently in appellate briefs. Counsel are forewarned that our benevolence in disregarding such defects is wearing thin, and that resort to sanctions in rule 18 of the California Rules of Court is a genuine risk counsel face when failing to provide this court with a statement of facts that complies with the rules. (Effective January 1, 2002, California Rules of Court, rule 18 is amended and renumbered as rule 14(e).) Aside from the threat of sanctions, it behooves counsel to comply with the rules in order to be better advocates for their clients. We are a busy court which "cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when his brief makes no reference to the pages where the evidence on the point can be found in the record." (*Metzenbaum v. Metzenbaum* (1950) 96 Cal.App.2d 197, 199 [214 P.2d 603]; see *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521] [" 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' "]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 [29 Cal.Rptr. 60] [an appellate court is "not obliged to perform the duty resting on counsel"].)

Accordingly, appellate counsel should be vigilant in providing us with effective assistance in ferreting out all of the operative facts that affect the resolution of issues tendered on appeal. They can accomplish this only by summarizing all of the operative facts, not just those favorable to their clients (see *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92

Cal.Rptr. 162, 479 P.2d 362]), and by providing exact record page citations for each fact cited by counsel (*Bernard v. Hartford Fire Ins. Co., supra,* 226 Cal.App.3d at p. 1205).

## B

Without much help from the parties, we summarize the facts and procedural history as follows:

After responding to a call regarding a fight, law enforcement officers James Smith and Murray Stapp saw two men on a motorcycle. Brian Willard was driving, and Lewis was the passenger. Subsequent events, which to some extent are disputed factually but are not relevant to the issue on appeal, led the officers to engage in a high-speed pursuit of the motorcycle. The pursuit, which lasted less than one and one-half minutes, ended at the intersection of Chestnut Avenue and Orangevale Avenue.

There is a crest in the roadway on Chestnut Avenue just before the intersection. As Officer Smith drove over the crest, he saw the motorcycle either stopping or attempting to negotiate a left turn onto Orangevale Avenue. The back tire began to skid, and the motorcycle started to go down. It appeared that the motorcycle suddenly stopped, crashing or going down on its left side.[1] Willard jumped or fell off the motorcycle. Lewis also appeared to jump or fall backward.

Lewis and the motorcycle were on the ground or almost on the ground when Officer Smith heard a thud over the sound of the siren.[2] The patrol car hit Lewis and propelled him into the air, whereupon he hit the road several times and suffered fatal injuries. It is not clear whether the patrol car ever collided with the motorcycle and, if so, whether it did so before or after it hit Lewis, or simultaneously. It is undisputed that the motorcycle went down without any force or intervention by Officer Smith.

---

[1]Plaintiffs disputed this assertion of fact in the trial court, but the evidence they cited in their opposition papers merely indicates that Smith saw smoke coming from the motorcycle's rear tire as it was "attempting to stop," or "coming to a stop or attempting to make an unsafe change or turn." This does not create a triable issue of material fact regarding whether the motorcycle crashed or went down.

[2]Plaintiffs disputed this factual assertion, contending that Lewis was standing in the road instead of simply being on the ground. But they did not cite to any evidence in the record in support of their assertion of fact as required by Code of Civil Procedure section 437c, subdivision (b). Assuming that whether Lewis was standing or lying in the road was material, plaintiffs' mere assertion, without citation to evidentiary support, is insufficient to create a triable issue of material fact. (*Lyons v. Security Pacific Nat. Bank, supra,* 40 Cal.App.4th at pp. 1006-1007; cf. *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796 [286 Cal.Rptr. 57].)

According to defendants, the pursuit was conducted pursuant to a Sacramento County Sheriff's Department General Order pertaining to pursuits, and the General Order met the statutory requirements of section 17004.7.

Defendants moved for summary judgment on two grounds: (1) they were not negligent as a matter of law; and (2) they were entitled to immunity pursuant to section 17004.7, which shields a public entity from liability for injuries or death resulting from the collision of a vehicle operated by a person who is being pursued by a peace officer employed by the public entity. According to defendants, the motorcycle crashed to the ground as its driver, Willard, attempted to make a left turn, and this collision with the ground resulted in Lewis's being ejected from the motorcycle and struck almost immediately thereafter by the pursuing patrol car.

Plaintiffs opposed the motion, alleging the immunity does not apply when the injury or death is inflicted by a collision with the vehicle operated by the peace officer, as opposed to a collision of the vehicle being operated by the fleeing suspect.

The trial court granted defendants' motion. It ruled that section 17004.7 immunity applied because Lewis's death resulted from a collision of the motorcycle, which crashed to the ground, causing him to be placed in imminent peril and struck almost immediately by the patrol car. In the court's view, "[t]he losing of control over the motorcycle, the ejection of [Lewis] from the motorcycle, and the subsequent collision of the motorcycle, [Lewis], the ground, and the pursuit vehicle, are all part of one event which the court determines to be a 'collision' of the suspect vehicle, thus causing the injury and resulting in immunity." The court concluded that, even if the patrol car struck Lewis after he fell off the motorcycle, and the patrol car never actually struck the motorcycle, the immunity applied because Lewis's injuries resulted from being placed in peril by the manner in which the motorcycle was operated, which caused the motorcycle to crash.

STANDARD OF REVIEW

In order to support summary judgment for a defendant, it must appear from the record either that the plaintiff cannot establish one or more of the elements of the cause of action or that the plaintiff cannot refute an affirmative defense established by the defendant. (Code Civ. Proc., § 437c, subd. (n); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); *Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 835 [71 Cal.Rptr.2d 817].)

When a defendant's motion for summary judgment is supported by affidavits and declarations sufficient to sustain the motion, the burden shifts to

the plaintiff to show the existence of a triable issue of material fact. (*Aguilar, supra,* 25 Cal.4th at p. 849; *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 [80 Cal.Rptr.2d 94].) An issue of fact is not created by speculation, conjecture, imagination, or guesswork; it can be created only by a conflict in the evidence submitted to the trial court in support of and in opposition to the motion. (*Lyons v. Security Pacific Nat. Bank, supra,* 40 Cal.App.4th at p. 1014.)

■ In opposing a defendant's motion for summary judgment, the plaintiff must submit a separate statement setting forth the specific facts showing that a triable issue of material fact exists. (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 622 [86 Cal.Rptr.2d 497]; *North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at pp. 30-31.) Without a separate statement of undisputed facts with references to supporting evidence in the form of affidavits or declarations, it is impossible for the plaintiff to demonstrate the existence of disputed facts. (*Lyons v. Security Pacific Nat. Bank, supra,* 40 Cal.App.4th at pp. 1006-1007.) When a fact upon which plaintiff relies is not mentioned in the separate statement, it is irrelevant that such fact might be buried in the mound of paperwork filed with the trial court; the court does not have the burden to conduct a search for facts that counsel failed to bring out. (*North Coast Business Park v. Nielsen Construction Co., supra,* 17 Cal.App.4th at p. 31.)

■ On appeal, we review the record de novo to determine whether the moving party met its burden of proof. (*Aguilar, supra,* 25 Cal.4th at p. 859; *Artiglio v. General Electric Co., supra,* 61 Cal.App.4th at p. 835.) But this de novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 373 [85 Cal.Rptr.2d 28]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

### DISCUSSION

### I

■ Ordinarily, "[a] public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in

the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." (Veh. Code, § 17001; further section references are to the Vehicle Code unless otherwise specified.) This is so even if the employee has immunity pursuant to section 17004. (*Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, 883-885 [148 Cal.Rptr. 361, 582 P.2d 952, 4 A.L.R.4th 858] [derivative immunity established by Gov. Code, § 815.2, subd. (b) does not apply to public entity's liability for damages caused by employee's motor vehicle accidents].)[3]

 A limited exception to the public entity's liability is set forth in section 17004.7, subdivision (b), which provides: "A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle."

To activate this statutory immunity, the written policy on vehicle pursuits must cover four criteria: (1) supervisory control of the pursuit if available; (2) procedures for designating primary and secondary units, and determining the total number of vehicles permitted to participate at one time in the pursuit; (3) procedures for coordinating operations with other jurisdictions; and (4) guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit, and when a pursuit should not be initiated or should be terminated. (§ 17004.7, subd. (c).)

Whether an adopted policy complies with these criteria is a question of law for the court. (§ 17004.7, subd. (d).) If the public agency adopts a pursuit policy which meets the statutory requirements, immunity applies regardless of whether the policy was implemented and followed by the peace officer in the particular pursuit in question. (*Brumer v. City of Los Angeles* (1994) 24 Cal.App.4th 983, 987 [29 Cal.Rptr.2d 515].)

On appeal, plaintiffs do not dispute that the General Order of the Sacramento County Sheriff's Department on vehicle pursuits is a valid pursuit

---

[3]Officer Smith was determined to be immune from state tort liability pursuant to section 17004, which provides in pertinent part: " '[A] public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle . . . when in the immediate pursuit of an actual or suspected violator of the law' . . . ." (*County of Sacramento v. Lewis, supra*, 523 U.S. 833, 837, fn. 1 [118 S.Ct. 1708, 1712, 140 L.Ed.2d 1043, 1052].)

policy. Rather, they contend that immunity does not apply because Lewis's fatal injuries resulted from the patrol car hitting him while he no longer was a passenger on the motorcycle. According to plaintiffs, immunity statutes must be narrowly construed, and there is no immunity under section 17004.7 for death caused when a pursuing peace officer's vehicle collides with the deceased.

However, the theory accepted by the trial court was that when Willard lost control of the motorcycle while trying to negotiate a turn, the motorcycle "crashed to the ground," i.e., was involved in a collision, thereby causing Lewis to jump off or fall off, which in turn resulted in Lewis being struck almost immediately by the patrol car. Hence, the court reasoned, even if there was never a collision between the motorcycle and the patrol car, the statute applied because Lewis's fatal injuries "result[ed] from the collision of a vehicle being operated by an actual or suspected violator of the law who [was] being . . . pursued by a peace officer . . . ." (§ 17004.7, subd. (b).)

Accordingly, to establish that the trial court erred in granting summary judgment in favor of defendants, plaintiffs have to establish either (1) there is a triable issue of material fact regarding whether the motorcycle was involved in a collision prior to Lewis being struck, or (2) even if Willard lost control of the motorcycle and it crashed to the ground immediately before Lewis was struck by the patrol car, section 17004.7 immunity does not apply to such a factual situation as a matter of law.

Plaintiffs do not address the first issue in their opening brief. It is not until their reply brief that they allege the motorcycle did not crash to the ground immediately before Lewis was struck by Officer Smith's patrol car. Apparently, plaintiffs believe that Willard simply stopped the motorcycle, at which point Lewis got off and was standing in the roadway before being hit by the patrol car. Not only have plaintiffs failed to raise this issue in their opening brief (see *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788]), they do not cite to any evidence in either defendants' or plaintiffs' statement of undisputed facts and supporting affidavits establishing there is a triable issue of material fact as to whether the motorcycle crashed to the ground or was in the process of colliding with the street when Lewis was struck almost simultaneously by the patrol car. Consequently, plaintiffs have waived any claim that there is a triable issue of material fact regarding whether a collision of the suspect's vehicle occurred. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority, supra,* 72 Cal.App.4th at p. 373; *Reyes v. Kosha, supra,* 65 Cal.App.4th at p. 466, fn. 6; *Kim v. Sumitomo Bank, supra,* 17 Cal.App.4th at p. 979.)

In any event, the only reasonable inference that can be drawn from the undisputed facts (Code Civ. Proc., § 437c, subd. (c)) is that the motorcycle

collided with the ground (see *County of Sacramento v. Lewis, supra*, 523 U.S. at p. 837 [118 S.Ct. at p. 1712, 140 L.Ed.2d at p. 1052] ["[t]he chase ended after the motorcycle tipped over as Willard tried a sharp left turn"]), causing Lewis to jump off or fall off the motorcycle.

Therefore, the relevant question on appeal is whether section 17004.7 immunity applies where a fleeing suspect's vehicle is in a collision (involving the suspect's vehicle alone or the suspect's vehicle and another vehicle not being driven by a peace officer) that results in a person being struck and injured by a pursuing peace officer's vehicle. This is a question of statutory interpretation, which is a legal question we consider de novo on appeal. (*Weaver v. State of California* (1998) 63 Cal.App.4th 188, 199 [73 Cal.Rptr.2d 571].)

II

The primary objective of statutory interpretation is to ascertain and effectuate legislative intent. (*Ream v. Superior Court* (1996) 48 Cal.App.4th 1812, 1817 [56 Cal.Rptr.2d 550].) To do so, a court first examines the actual language of the statute, giving the words their ordinary, commonsense meaning. (*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 732 [68 Cal.Rptr.2d 239].) The statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, "[t]here is no need for judicial construction and a court may not indulge in it." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) Accordingly, "[i]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].)

Where, however, the statutory language is ambiguous on its face or is shown to have a latent ambiguity such that it does not provide a definitive answer, we may resort to extrinsic sources to determine legislative intent. (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 442 [75 Cal.Rptr.2d 738, 956 P.2d 1191]; *Stanton v. Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].) Under this circumstance, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) "In such cases, a court may consider both the legislative history of the statute and the wider historical circumstances of its enactment to ascertain the legislative intent." (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 724 [80 Cal.Rptr.2d 506, 968

P.2d 65], disapproved on other grounds in *Aguilar, supra,* 25 Cal.4th at p. 854, fn. 19.)

■ And a court may disregard the plain meaning of a statute and resort to its legislative history to aid in interpretation when applying the literal meaning of the statutory language "would inevitably (1) produce absurd consequences which the Legislature clearly did not intend or (2) frustrate the manifest purposes which appear from the provisions of the legislation when considered as a whole in light of its legislative history. . . ." (*Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939, 1945 [59 Cal.Rptr.2d 72], fn. and citations omitted.) But "[i]f the legislative history gives rise to conflicting inferences as to the legislation's purposes or intended consequences, then a departure from the clear language of the statute is unjustified. . . ." (*Faria v. San Jacinto Unified School Dist., supra,* at p. 1945, citation omitted.)

### III

■ The statutory language at issue here concerns the extent to which injuries may be construed as *"resulting from the collision* of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle." (§ 17004.7, subd. (b), italics added.)

The verb "result" means "to proceed, spring, or arise as a consequence, effect, or conclusion. . . ." (Webster's 3d New Internat. Dict. (1986) p. 1937.) The noun "collision" means "the action or an instance of colliding, violent encounter, or forceful striking together typically by accident and so as to harm or impede . . . ." (*Id.* at p. 446.) ■ Thus, to "collide" means to "become impelled into violent contact . . . to strike or dash together in collision typically by accident with a degree of force and shock and with solid rather than glancing or sideswiping impact" (*id.* at p. 445), e.g., "waves *colliding* with the rocks" (*ibid.,* original italics).

■ Giving effect to the common meaning of these words in the immunity provision of section 17004.7, subdivision (b), we conclude the Legislature intended that immunity applies if Lewis's fatal injuries resulted from his jumping off or falling off the motorcycle when Willard lost control and it hit the ground or began to hit the ground, and then Lewis was struck by the pursuing patrol car. Just as a wave collides with the rocks (Webster's 3d New Internat. Dict., *supra,* at p. 445), if the motorcycle went down onto the street, i.e., crashed, this would constitute a "collision" of the motorcycle

with the ground within the common meaning of that word. (*Id.* at p. 446.) And if Lewis jumped off or fell off the motorcycle as it began to crash, certainly it must be said that this "result[ed]" from the collision, i.e., his jumping off or falling off "ar[o]se as a consequence, effect" of the collision. (*Id.* at p. 1937.) For the same reason, if the pursuing patrol car then struck and killed Lewis when he jumped off or fell off as the motorcycle crashed in the path of the patrol car, it must be said that Lewis's death resulted from the collision of the motorcycle with the ground.

Accordingly, since the undisputed facts establish that Lewis was killed as a result of jumping off or falling off of Willard's motorcycle as it collided with the ground in the path of a pursuing patrol car, whereupon Lewis was then struck by the patrol car, defendants are immune from civil liability because Lewis's death "result[ed] from the collision of a vehicle being operated by an actual or suspected violator of the law who [was] being . . . pursued by a peace officer employed by the public entity in a motor vehicle." (§ 17004.7, subd. (b).)

## IV

Plaintiffs strongly disagree with our interpretation of the immunity statute. They contend the legislative history discloses the Legislature intended that section 17004.7 would not apply to death or injury which results when a pursuing peace officer's vehicle (hereafter a police vehicle) hits the deceased or injured person.

Even if we look beyond the plain meaning of the statutory language, a review of the legislative documentation provided by plaintiffs fails to support their view that the Legislature intended section 17004.7 immunity would not apply in the factual circumstances of this case.[4]

The "Committee Statement" of Assembly Member Stirling, who authored Assembly Bill No. 1912 from which section 17004.7 originated, states: "Under current law a public employee is not liable for personal injury or property damage resulting from the operation of an emergency vehicle in immediate pursuit of an actual or suspected violator of the law. ([§] 17004). [¶] This immunity does not extend to the public entity itself. [¶] This anomaly has resulted in some public entities being sued for damages caused to third parties by persons fleeing from law enforcement officers in motor

---

[4]In addition to the legislative materials we cite, *post*, plaintiffs also submitted three enrolled bill reports from various offices within the executive branch. We decline to consider those reports because they are not persuasive indicators of the Legislature's intent. (*People v. Patterson* (1999) 72 Cal.App.4th 438, 444 [84 Cal.Rptr.2d 870]; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161, fn. 3 [69 Cal.Rptr.2d 692].)

vehicles. While plaintiffs do not ordinarily prevail in such lawsuits, there is nonetheless the potentially adverse impact on law enforcement decisions which may occur because of the exposure to liability. Stated differently, the ability of peace officers to pursue criminal suspects should not be curtailed on the basis of potential tort liability for injury caused by the fleeing party. [¶] AB 1912 would provide immunity for public entities from damages caused to third parties by persons fleeing from a peace officer in vehicular pursuit. This immunity would exist only where the public entity has adopted a policy on police vehicular pursuits that meets the criteria set forth in the bill. The sponsors of this bill recognize the need to both preserve law enforcement's ability to pursue suspects and protect the public from unnecessarily dangerous pursuits through the adoption and implementation of policies controlling such pursuits. [¶] *The bill does not affect the liability of public entities for injuries directly resulting from the negligent operation of the police vehicle itself* ([§] 17001)." (Italics added, capitalization & original underscoring omitted.)

It is not clear whether this document reflects only the personal views and intent of the author, in which case it is inadmissible on the question of legislative intent, or whether it reflects testimony or argument to one of the Legislature's committees, in which case it has some bearing on legislative intent. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856]; *McDowell v. Watson, supra,* 59 Cal.App.4th at p. 1161, fn. 3.)

In any event, a similar purpose is disclosed in a Senate Committee on the Judiciary report analyzing Assembly Bill No. 1912 as follows: "Under existing law, a public entity is generally liable for death or injury caused by the operation of a motor vehicle, to the same extent as a private person, but is entitled to certain immunities. Under existing law, a public employee is not liable for civil damages resulting from the operation of an authorized emergency vehicle in certain emergencies. [¶] This bill would provide that a public agency employing peace officers which adopts a written policy on vehicular pursuits, as specified, would be immune from liability to anyone for personal injury, death or property damage resulting from a collision of the suspect's vehicle." "Supporters of the bill argue that the risk of civil liability for causing accidents can deter peace officers from pursuing fleeing persons, often to the detriment of public safety. In some cases, even the fleeing suspect has sought to recover from the public entity employing the officer from whom he or she was fleeing. The bill is intended to encourage public employers of peace officers to adopt safe pursuit policies." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1912 (1987-1988 Reg. Sess.) as amended Aug. 20, 1987.)

This Senate Committee on the Judiciary report notes *Brummett v. Sacramento County, supra,* 21 Cal.3d 880, held that a public entity is liable under Vehicle Code section 17001 for damages caused by its employees' motor vehicle accidents and that the public entity does not have derivative immunity under Government Code section 815.2 even though the individual employees are immune from liability under Vehicle Code section 17004. The report continues: "*Under this bill, the public entity would not be immune from liability for damages if they result from a collision of the peace officer's vehicle.* In such cases, existing negligence and government tort liability principles apply." (Italics added.)

These documents reflect that, by enacting section 17004.7, the Legislature intended to eliminate the public entity's fear of being held responsible for damages resulting from a collision of the fleeing suspect's vehicle, thereby encouraging peace officer pursuits of fleeing criminals, but also intended to maintain the entity's general liability for damages arising from collisions with police vehicles, thereby encouraging the public entity to require its peace officers to use safe pursuit tactics. (*Billester v. City of Corona* (1994) 26 Cal.App.4th 1107, 1123-1124 [32 Cal.Rptr.2d 121].) The public entity remains liable for injuries that are proximately caused by the negligent operation of a police vehicle (§ 17001), except where it has a written pursuit policy and the injuries resulted from the collision of a vehicle operated by a suspect being pursued by a peace officer. (§ 17004.7.)

Although this legislative history indicates the Legislature did not intend section 17004.7 to affect the general liability of a public entity for damages resulting from a collision of the pursuing police vehicle, it does not address the Legislature's intent when the fleeing suspect's vehicle collides with the pursuing police vehicle. In such cases, there is a conflict between the legislative intent that the public entity be immune from liability for injuries resulting from the collision of the fleeing suspect's vehicle but not from those caused by a collision with the pursuing police vehicle.

 Because the legislative history gives rise to conflicting inferences regarding the legislation's purposes or intended consequences, a departure from the clear language of the statute is unjustified. (*Faria v. San Jacinto Unified School Dist., supra,* 50 Cal.App.4th at p. 1945.) Our function in construing section 17004.7 "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; *Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at p. 1054.) Therefore, we must follow the language used in the statute, giving the words their plain meaning even if it is probable that a different object was in the

mind of the Legislature. (*People v. Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].)

 The plain meaning of the language in section 17004.7 is not limited to immunizing public entities for injuries or death resulting solely from the collision of the fleeing suspect's vehicle, or from a collision of the suspect's vehicle as long as the pursuing police vehicle is not involved in the collision. And the words of the statute do not say there is immunity from liability for injuries or death resulting from the collision of a suspect's vehicle except where the pursuing police vehicle, not the suspect's vehicle, actually inflicts or is involved in inflicting the injuries or death. Nor does the language of the statute say the injuries or death must be inflicted "by" the collision of the suspect's vehicle, as opposed to "resulting from" the collision of the suspect's vehicle.

For example, if Lewis had been hit and killed by a third party instead of a police vehicle after the motorcycle crashed, there would be no question that his death was the result of a collision of the suspect's vehicle within the meaning of section 17004.7. The public entity would be immune from any potential liability premised upon an allegation that Lewis's fatal injuries resulted from a peace officer pursuit which had been conducted negligently. If the plain language of the statute would imbue the public entity with immunity in that situation, the result should not be any different just because a police vehicle rather than a third party struck Lewis.

Moreover, plaintiffs' suggested interpretation would lead to absurd consequences in situations where a third party is struck by the suspect's vehicle and then is struck by the pursuing police vehicle as a result of the first collision. Under plaintiffs' construction of the statute, section 17004.7 either would provide no immunity to the public entity at all because of the involvement of the police vehicle, or it would provide immunity only for the damages inflicted by the suspect's vehicle, not for those inflicted by the police vehicle. The former interpretation is contrary to the legislative intent to immunize public entities for injuries arising from collisions of suspects' vehicles. The latter interpretation would require a parsing of the damages between those caused by the suspect's vehicle and those caused by the police vehicle—a cumbersome and, in many cases, impossible task. Absent explicit statutory language to such an effect, we will not presume that the Legislature intended such a burdensome and laborious result. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1374 [64 Cal.Rptr.2d 741] [court must not adopt an interpretation of a statute leading to absurd consequences]; *Ream v. Superior Court, supra,* 48 Cal.App.4th at p. 1818 [if a statute is amenable to alternative interpretations, the one that leads to the more reasonable result will be followed].)

Our interpretation of section 17004.7 finds support in *Weaver v. State of California, supra,* 63 Cal.App.4th 188. Andrew Weaver, a passenger in a stolen car driven by a friend, sustained serious injuries when the car was rammed by a police vehicle using a pursuit immobilization technique (PIT) maneuver. The PIT maneuver caused the stolen car to spin, go over a curb, and collide with an abutment. (*Id.* at pp. 193-194.) Weaver asserted that the immunity provided by section 17004.7 applies only to collisions which do not involve any intentional or deliberate acts of the pursuing peace officers. (*Weaver, supra,* at pp. 199-200.) The appellate court disagreed.

As the court explained, Weaver's contention did not find any support in the statutory language, and constituted an attempt to read provisions into the statute. (*Weaver v. State of California, supra,* 63 Cal.App.4th at p. 200.) "The statute is silent as to the nature of the conduct of the peace officers engaged in the pursuit. There is no express statutory requirement that the pursuit by the peace officer be conducted in a particular manner or have a particular type of cause and effect relationship with the collision; the statute requires that the plaintiff's injuries result from the 'collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer . . . .' (§ 17004.7, subd. (b).) Thus, even if the PIT maneuver is character-ized as a 'separate act' and not part of the pursuit, . . . it remains undis-puted that [Weaver's] injuries were a result of the collision of a vehicle being operated by . . . an actual violator of the law who had been, or believed that he was, pursued by a peace officer." (*Weaver v. State of California, supra,* at p. 200.)

In other words, regardless of any collision with a police vehicle, section 17004.7 immunity applies as long as the injury or death may be said to result from a collision of the suspect's vehicle. Had it intended to restrict the statutory immunity to situations where injury or death resulted *solely* from a collision of the suspect's vehicle, without any contributory conduct of the peace office driving a police vehicle, the Legislature could have drafted section 17004.7 to explicitly reflect that intent. "The drafters and the Legis-lature did not do so, however, and it is not our function to insert language omitted by the Legislature." (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at p. 1054)

In support of their position that immunity does not apply, plaintiffs cite the following language in *Billester v. City of Corona, supra,* 26 Cal.App.4th 1107 (*Billester*): "Section 17004.7 does not cover accidents in which victims are injured by peace officers' vehicles during pursuits of suspects. Unlike fleeing suspects, peace officers can be controlled by the public agencies for

which they work. This provides a rational basis for distinguishing between the two categories. First, the Legislature could rationally have concluded it was appropriate to hold public agencies accountable for the actions of their employees during pursuits, but not for the actions of the suspects being pursued. Second, the Legislature could rationally have concluded that providing immunity when peace officers injure innocent persons during pursuits would have removed incentives for public agencies to ensure the safe driving of their peace officers during pursuits. Holding public agencies liable for injuries inflicted by their employees provides strong incentive for public agencies to control the training and skill of their peace officers and the mechanical soundness of police vehicles." (*Id.* at p. 1124.)

Plaintiffs' reliance on this language is unavailing when it is viewed in context. The plaintiff in *Billester* was injured directly by a collision with the fleeing suspect only, a factual situation within the plain language of section 17004.7. (*Billester, supra,* 26 Cal.App.4th at p. 1112.) Thus, the court did not address whether the statute applies where injuries or death result at least in part from both a collision of the suspect's vehicle as well as the police vehicle. *Billester* simply rejected the claim that section 17004.7 violates equal protection principles because, under the specific circumstances of that case, it provided immunity from liability for damages caused by a collision with a suspect's vehicle, but would not provide immunity for injuries caused by an identical collision with a police vehicle even though both types of accidents are a consequence of police pursuits of criminal suspects. (*Billester, supra,* at pp. 1121-1124.)

The *Billester* court's resolution of that issue must be limited to the circumstances of the case. Had the plaintiff in *Billester* been struck solely by the police vehicle instead of the fleeing suspect's car, there would be no immunity because there would be no injuries resulting from a collision of the suspect's vehicle. Within this context, the *Billester* court's statement that the statute does not cover accidents in which victims are injured by police vehicles is correct. We decline to read anything more into this statement.

V

Citing *Thomas v. City of Richmond* (1995) 9 Cal.4th 1154 [40 Cal.Rptr.2d 442, 892 P.2d 1185] (*Thomas*), plaintiffs also claim that section 17004.7 immunity does not apply to injuries or death caused by a collision between a police vehicle and a pedestrian and, thus, statutory immunity does not apply to Lewis's death because he was a pedestrian at the time he was hit by the police vehicle.

Plaintiffs' reliance on *Thomas* is misplaced under the factual circumstances of Lewis's death. *Thomas* involved injuries arising from a vehicle

pursuit of a suspect fleeing on foot, not a suspect fleeing in a vehicle. (*Thomas, supra,* 9 Cal.4th at p. 1156.) That case addressed the interplay between Vehicle Code section 17001, which makes a public entity liable for injuries that result from its employee's operation of a motor vehicle, and Government Code section 845.8, which involves a public entity's immunity from liability for injuries caused by a person resisting arrest. (*Thomas, supra,* at pp. 1159-1165.)

Although *Thomas* contains dictum suggesting that the public entity immunity in section 17004.7 does not apply when a police vehicle runs over a suspect who is fleeing on foot (*Thomas, supra,* 9 Cal.4th at pp. 1156, 1164-1165), the decision is not relevant to the present case because plaintiffs have not established the necessary factual predicate. They point to no evidence in the record demonstrating that Lewis was in the process of fleeing on foot and that Officer Smith chased Lewis in a police vehicle and ran over him. Rather, Officer Smith pursued Willard and Lewis while they were on Willard's motorcycle. During the pursuit, the motorcycle crashed, causing Lewis to jump off or fall off and be hit almost immediately by Officer Smith's police vehicle. Hence, plaintiffs' reliance on *Thomas* is unavailing.

At oral argument, plaintiffs cite for the first time the decision in *Hooper v. City of Chula Vista* (1989) 212 Cal.App.3d 442 [260 Cal.Rptr. 495] (*Hooper*) for the proposition that, in overruling *Hooper*, the California Supreme Court in *Thomas* decided that the immunity of section 17004.7 does not apply when a peace officer's vehicle collides with a fleeing suspect's vehicle. We disagree.

*Hooper* involved a collision between a fleeing suspect on a motorcycle and a pursuing peace officer's vehicle that occurred before section 17004.7 became effective. (*Hooper, supra,* 212 Cal.App.3d at pp. 445-446, 456.) Thus, the case involved the interplay between Vehicle Code section 17001, which imposes liability on a public entity for injuries proximately caused by the negligent operation of a motor vehicle by a public employee, and Government Code section 845.8, which grants immunity to a public entity for injuries caused by a person resisting arrest. (*Hooper, supra,* at p. 449.)

*Hooper* held that the immunity of Government Code section 845.8 provides an exception to the liability imposed by Vehicle Code section 17001 where a suspect flees from pursuing officers, is injured by a collision between the suspect's vehicle and a pursuing peace officer's vehicle, and then sues the public entity for damages. (*Hooper, supra,* 212 Cal.App.3d at pp. 453-456.) Although then recently enacted section 17004.7 did not apply,

*Hooper* concluded the legislative history of section 17004.7 disclosed that the Legislature did not intend to permit fleeing suspects, as opposed to innocent third parties, to recover for injuries incurred during police pursuits. (*Hooper, supra,* at p. 456.)

*Thomas* disapproved *Hooper,* holding instead that Government Code section 845.8 "does not provide immunity to public entities for liability that is predicated on Vehicle Code section 17001" (*Thomas, supra,* 9 Cal.4th at p. 1165) because, "if the Legislature had intended the immunity of [Government Code] section 845.8 to yield to Vehicle Code section 17001, it would have said so, as it did with other immunities." (*Id.* at p. 1161.) *Thomas* noted: "There are several difficulties with the analysis of *Hooper v. City of Chula Vista, supra,* 212 Cal.App.3d 442. Its distinction between actions brought by third parties and by the fleeing suspect finds no support in the language of either [Government Code] section 845.8 or Vehicle Code section 17001. Moreover, . . . the adoption of Vehicle Code section 17004.7, rather than supporting the result of *Hooper,* does the contrary. The Legislature did, as suggested in *Hooper,* give consideration to this general question, and did take action to increase the immunity afforded to public entities. Unfortunately for [public entity's] position, however, that action did not include entirely overruling *Duarte v. City of San Jose* [(1980)] 100 Cal.App.3d 648 [161 Cal.Rptr. 140], and its progeny [which held that Government Code section 845.8 does not shield a public entity from liability under Vehicle Code section 17001], or distinguishing between actions brought by suspects from those brought by third parties. The increase in immunity granted by Vehicle Code section 17004.7 does not cover this situation." (*Thomas, supra,* at pp. 1164-1165, italics omitted.)

Plaintiffs suggest that the last sentence of the aforesaid quotation from *Thomas* constitutes a holding that section 17004.7 does not grant immunity for a collision like the one which occurred in *Hooper* between a fleeing suspect's vehicle and a pursuing peace officer's vehicle. Plaintiffs are wrong. When read in context, the cited language merely indicates that the increased immunity in section 17004.7 does not cover—that is, it does not address—whether an action must be brought by a fleeing suspect, as opposed to a third party, for the immunity to apply.

In other words, whether the immunity in section 17004.7 applies has nothing to do with whether an "innocent" third party or a fleeing suspect was injured. (*Weaver v. State of California, supra,* 63 Cal.App.4th at p. 200, fn. 4.) Rather, the critical question is whether the plaintiff's injuries resulted from the collision of a vehicle being operated by a fleeing suspect.

## VI

In sum, because Lewis's death resulted from the collision of the motorcycle as it was fleeing from a pursuing police vehicle, the trial court concluded correctly that section 17004.7 immunity applies. Accordingly, the court properly entered summary judgment in defendant's favor.

## DISPOSITION

The judgment is affirmed.

Sims, J., and Davis, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 23, 2002.