Filed 7/17/23  Yasoua v. City of Chula Vista CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NAMIER YASOUA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF CHULA VISTA, <br><br> Defendant and Respondent. | D080544 <br><br><br> (Super. Ct. No. 37-2019-00062842-CU-PA-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed with directions.

Namier Badri Aziz Yasoua and Janette Noel, in pro. per., for Plaintiffs and Appellants.

Glen R. Googins, City Attorney, Karen Rogan, Assistant City Attorney, and Eric B. Alden, Deputy City Attorney; Colantuono, Highsmith & Whatley, Alena Shamos and Merete Rietveld, for Defendant and Respondent.


Namier Yasoua and Janette Noel appeal the judgment entered against them in their action against the City of Chula Vista (the City) for personal injuries they allegedly sustained when a City police officer who was pursuing

a suspected traffic law violator negligently drove his patrol vehicle into the back of appellants' vehicle.  The City filed a motion for summary judgment based on the statutory immunity for collisions involving vehicles being pursued by police, and, in part because appellants filed no opposition, the trial court granted the motion.  Because the City did not meet its burden to establish the elements of the immunity it asserted, however, the burden never shifted to appellants to submit opposition raising a triable issue of material fact.  We therefore reverse the judgment.

## I.

## BACKGROUND

A.  *Trial Court Litigation*

Jordan Garcia was employed by the City as a police officer and was on patrol when he drove his vehicle into the rear of appellants' vehicle as he began pursuing a third vehicle he had seen make unsafe traffic lane changes. After the City denied their claim under the Government Claims Act (Gov. Code, § 810 et seq.), appellants filed a civil action against the City. Appellants alleged Garcia's negligence in operating the City's vehicle "caused them severe injury necessitating medical treatment" and "lost earnings," and they prayed for general and special damages.  The City answered the complaint that contained a general denial and many affirmative defenses, including immunity under Vehicle Code section 17004.7[1] and Government

---

[1]     "A public agency employing peace officers that adopts and promulgates a written policy on, and provides regular and periodic training on an annual basis for, vehicular pursuits complying with subdivisions (c) and (d) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the public entity."  (Veh. Code, § 17004.7,

Code section 815.[2]

During the litigation, the parties communicated by e-mail and apparently agreed to accept service of discovery requests and responses and other documents by e-mail. They also filed, or attempted to file, documents electronically.

The City moved for summary judgment (Code Civ. Proc., § 437c) on the basis that it was "directly immune from liability" under Vehicle Code section 17004.7, and was "immune from direct (non-vicarious) negligence liability for any conduct associated with its peace officers" under Government Code section 815, subdivision (a). In support of the motion, the City submitted a declaration from Garcia describing the events that led up to the collision between his and appellants' vehicles. Garcia stated that while he was on patrol in a marked vehicle, he saw a driver make lane changes in an unsafe manner and without signaling, and decided to pursue the driver to make a traffic stop. During the pursuit, Garcia's vehicle collided with appellants' vehicle. Garcia also stated he was familiar with the City's written policy regarding vehicle pursuits; had acknowledged in writing he received, read, and understood the policy; and had completed training on vehicle pursuits less than five months before he drove into appellants' vehicle. An

---

subd. (b)(1).) For the immunity to apply, the policy must meet the minimum standards prescribed by statute and peace officers must complete annual training that covers those standards. (*Id.*, § 17004.7, subds. (c), (d).)

[2]  "Except as otherwise provided by statute:  [¶]  (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.  [¶]  (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." (Gov. Code, § 815.)

3

agent in the City's police department who trains officers on vehicle pursuits submitted a declaration describing the annual training and attaching a copy of the City's policy. A sergeant in the City's police department who had access to the City's written policies and officers' training records submitted a declaration stating the policy on vehicle pursuits in effect when Garcia drove into appellants' vehicle was issued approximately two years before the collision, and the training records showed Garcia had acknowledged the policy and completed the annual training before the collision. The City incorporated the information in these declarations into a separate statement of undisputed material facts that it submitted as part of the summary judgment motion.

Four days before the hearing on the motion, appellants sent an e-mail to counsel for the City that purported to be their opposition to the motion. The e-mail cited no legal authorities and attached no declarations and no response to the City's separate statement. Appellants unsuccessfully tried to file the opposition with the court electronically.

The trial court held a hearing and granted the City's motion. The court stated "the City, especially in the absence of any opposition, has carried [its] burden," and ruled the undisputed material facts showed the City was immune from liability under Vehicle Code section 17004.7 and Government Code section 815, subdivision (a). A judgment in favor of the City and against appellants followed.

B.    *Appellate Court Litigation*

Appellants ask us to reverse the summary judgment and allow them to have a jury trial. Although their opening brief does not set out distinct claims of error and is difficult to follow, we discern three such claims. First, appellants claim the summary judgment motion was "unconstitutional"

4

because it deprived them of their right to a jury trial under the Seventh Amendment to the United States Constitution. Second, appellants claim that by sending an e-mail to the City's attorney four days before the hearing on the motion for summary judgment, they submitted "valid opposition," which the court should have accepted and used to deny the City's "laughable" motion. Third, appellants claim the trial judge was "corrupt" and "biased" against them.

The City filed a motion to strike the portions of appellants' opening brief the City contends contain improper and unsupported factual assertions and arguments about injuries to appellants and their daughter, corruption and bias of the trial court judge, corruption of the City and its attorney, appellants' unfiled opposition to the summary judgment motion, and whether Garcia was pursuing a suspected traffic law violator when he drove into appellants' vehicle. Appellants filed opposition to the motion and included several documents they allege support the factual assertions and legal arguments in their opening brief.

The City filed a respondent's brief in which it defends the trial court's order granting their motion for summary judgment, argues appellants have not established error, and urges us to affirm the judgment.

Appellants filed a reply brief in which they assert "[t]he evidence is overwhelming that the [C]ity . . . cannot claim immunity from this particular case" but cite no such evidence in the record.

About two weeks later, appellants filed a "motion introducing existing evidence" by which they ask us to consider audio and video recordings of "the scene after the crash," which they assert "nullify" the City's immunity defense. The City opposed the motion on the grounds it was untimely and

5

the recordings appellants sought to add to the record were inadmissible and not presented to the trial court.

## II.

## DISCUSSION

We first dispose of the parties' motions and then decide the appeal.

A.    *Motions*

1.    *The City's Motion*

The City moves to strike the portions of appellants' opening brief that it contends contain unsupported facts or improper argument.  We perceive many defects in the brief, including:  (1) no separate headings for claims of error; (2) no citations to the record for most factual assertions; (3) inclusion of facts that are not in the record; (4) no citation of authorities in support of legal arguments; and (5) use of an impermissibly small font.  (Cal. Rules of Court, rule 8.204(a)(1)(B), (C), (2)(C), (b)(4).)  Such defects would allow us to strike the brief.  (*Id.*, rule 8.204(e)(2)(B).)  The brief also contains unsubstantiated accusations of corruption against the trial court judge, the City, and its attorney and offensive language.  An appellate court may "strike from its files a brief or other document containing disrespectful, scandalous, or abusive language directed against the courts, officials, or litigants." (*Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 314 (*Carpenter*).) Although we do not condone appellants' violations of the form and content rules for briefs and strongly disapprove of their scurrilous accusations, we deny the City's motion to strike portions of the opening brief.  We instead exercise our discretion to disregard appellants' noncompliance with the rules (Cal. Rules of Court, rule 8.204(e)(2)(C)), and disregard all factual assertions unsupported by the record and all legal arguments unsupported by authority (*County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 861; *Hearn*

6

*Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 150; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632).

  2. *Appellants' Motion*

  Appellants move to add to the record audio and video recordings of events immediately after the collision between their vehicle and Garcia's. On an appeal from a summary judgment, "we take the facts from the record that was before the trial court when it ruled on th[e] motion." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "Generally, ' "in reviewing summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." ' " (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 502-503, italics omitted.) Appellants could have presented the recordings to the trial court in opposition to the City's motion for summary judgment, but they did not. It is too late for them now to submit them in an effort to defeat the motion. (*Valdez v. Costco Wholesale Corp.* (2022) 85 Cal.App.5th 466, 476; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252, fn. 7.) Their "motion introducing existing evidence" is denied.

B. *Appeal*

  We now turn to the merits of the appeal. Appellants contend "the most important part of the whole appeal" is that the trial court erred by granting the City's motion for summary judgment based on their failure to file opposition. Appellants assert that throughout the litigation they communicated with the City's attorney and exchanged discovery and other documents via e-mail, and based on that practice they insist they "opposed the summary judgment directly through an email to [the City's attorney] and

7

yet on the hearing date . . . the judge handed this baseless unjust ruling and illegal judgement." Appellants also contend the City's assertion of immunity is "fraudulent" and "laughable," because Garcia admitted fault in colliding with their vehicle, he was not in pursuit of another vehicle when the collision occurred, and he committed perjury by stating otherwise in his declaration. As we explain below, we reject appellants' contention they properly opposed the motion, but conclude their failure to do so did not allow the trial court to grant the motion for summary judgment, because the City did not sustain its initial burden on the motion.

Appellants failed to comply with the procedural requirements for an opposition to a motion for summary judgment. "An opposition to the motion shall be served and filed not less than 14 days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise." (Code Civ. Proc., § 437c, subd. (b)(2).) Nothing in the record shows the court ordered a different deadline for service and filing of the opposition. At the hearing on the motion, the City's attorney told the court that four days before the hearing he "receive[d] an e-mail from plaintiff, which purport[ed] to be their opposition," but it "was never filed with the [c]ourt." Yasoua responded, "I tried to do e-filing late, but I think I made a mistake. I thought it filed and it didn't." Although the parties apparently agreed to accept service of documents by e-mail, service on a party does not constitute filing with the court. As self-represented litigants, appellants might not have been aware of the applicable deadlines and other requirements for service and filing nor familiar with electronic filing of court documents. Nevertheless, "[e]xcept when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

8

" 'Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure.' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31.) Appellants did not do so with regard to service and filing of opposition to the City's motion.

Appellants' failure to file opposition to the summary judgment motion, however, did not by itself permit the trial court to grant the motion. "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. . . . *Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion.*" (Code Civ. Proc., § 437c, subd. (b)(3), italics added.) This provision gives the trial court discretion to grant a motion for summary judgment if the opposing party does not file a proper separate statement, but *only* if the moving party has met its initial burden to show there is no triable issue of material fact and it is entitled to a judgment as a matter of law. (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1196; *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086.) Reviewing the record de novo (*Flores v. City of San Diego* (2022) 83 Cal.App.5th 360, 372 (*Flores*)), we conclude the City did not meet that burden.

The City moved for summary judgment primarily based on immunity under Vehicle Code section 17004.7, and therefore had an initial burden to present evidence to establish each element of the immunity. (Code Civ. Proc., § 437c, subds. (a)(1), (p)(2); *Riley v. Alameda County Sheriff's Office* (2019) 43 Cal.App.5th 492, 502 (*Riley*); *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858.) The immunity applies to "[a] public agency employing peace officers that adopts and promulgates a written policy on,

9

and provides regular and periodic training on an annual basis for, vehicular pursuits complying with subdivisions (c) and (d)." (Veh. Code, § 17004.7, subd. (b)(1).)[3] An agency that has such a policy and provides the required training is "immune from liability for civil damages for personal injury to or death of any person or damage to property *resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the public entity.*" (Veh. Code, § 17004.7, subd. (b)(1), italics added.)

The City qualifies as a "public agency" and "public entity" under the immunity statute (Veh. Code, § 17000, subd. (c); *Alcala v. City of Corcoran* (2007) 147 Cal.App.4th 666, 670-671 (*Alcala*)), and it submitted evidence in support of the summary judgment motion that it has a vehicular pursuit policy and provides police officers annual training on the policy (see pp. 3-4, *ante*). But for the immunity to apply, the injuries for which appellants seek damages from the City must have resulted from the collision of a vehicle that was being driven by an actual or suspected violator of the law whom Garcia was pursuing in his patrol vehicle. (Veh. Code, § 17004.7, subd. (b)(1); *Riley*, *supra*, 43 Cal.App.5th at pp. 497-498 [§ 17004.7 "provides a public agency immunity from liability for collisions involving vehicles being pursued by peace officers"].) To determine whether the immunity applies, "the critical

---

3      Vehicle Code section 17004.7, subdivision (c) prescribes minimum standards the policy must meet. Subdivision (d) of that statute defines " '[r]egular and periodic training' " as "annual training that shall include, at a minimum, coverage of each of the subjects and elements set forth in subdivision (c) and that shall comply, at a minimum, with the training guidelines established pursuant to Section 13519.8 of the Penal Code." Penal Code section 13519.8 requires the Commission on Peace Officer Standards and Training to implement training courses on high-speed vehicle pursuits.

10

question is whether the plaintiff's injuries resulted from the collision of a vehicle being operated by a fleeing suspect." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 128 (*Lewis*); accord, *Nguyen v. City of Westminster* (2002) 103 Cal.App.4th 1161, 1168 (*Nguyen*).)

The answer to that question in this case is "no." The collision that caused appellants' injuries was between their vehicle and the patrol vehicle Garcia was driving, *not the vehicle he was pursuing*. This case is thus unlike the cases the City mentioned at oral argument, in each of which the vehicle being pursued by police was part of the collision from which the plaintiffs' injuries resulted. (See *Ramirez v. City of Gardena* (2018) 5 Cal.5th 995, 997 [plaintiff's decedent was passenger in pursued truck that hit pole after police vehicle bumped truck]; *Riley, supra*, 43 Cal.App.5th at p. 498 [plaintiff was struck by pursued car]; *Nguyen, supra*, 103 Cal.App.4th at p. 1163 [plaintiff was struck by dumpster that was struck by pursued van]; *Lewis, supra*, 93 Cal.App.4th at p. 121 [plaintiffs' decedent was struck by police car after jumping or falling off pursued motorcycle as it collided with ground]; but see *Alcala, supra*, 147 Cal.App.4th at p. 668 [stating, apparently erroneously, that plaintiffs' decedent died after his vehicle was hit by police vehicle pursuing murder suspect; parties' briefs state that suspect's vehicle struck decedent's vehicle (see 2006 WL 3377727, at p. *5)].) Although, as the City pointed out at argument, in *some* of those cases the police vehicle was involved in the collision from which the plaintiffs' injuries resulted, in *all* of them (with the dubious exception of *Alcala*) the vehicle being pursued by police was involved. It is the involvement of the pursued vehicle in the collision, not that of the pursuing police vehicle, that is necessary for the immunity to apply. (Veh. Code, § 17004.7, subd. (b)(1); *Nguyen*, at p. 1168; *Lewis*, at pp. 120-121.) Since the vehicle Garcia was pursuing was not

11

involved in the collision from which appellants' injuries allegedly resulted, Vehicle Code section 17004.7 is inapplicable on its face, and the trial court erred by ruling it barred appellants' action. (See *Flores*, *supra*, 83 Cal.App.5th at p. 392 [trial court erred by granting summary judgment when city did not show entitlement to immunity under § 17004.7].)

The other statute the City invoked in support of its immunity defense and on which the trial court relied in granting summary judgment (Gov. Code, § 815, subd. (a)) does not bar appellants' action either. That statute states: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (*Ibid*.) This codifies the rule that "[i]f the Legislature has not created a statutory basis for it, there is no government tort liability." (*State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009; see *Torres v. Department of Corrections & Rehabilitation* (2013) 217 Cal.App.4th 844, 850 ["Sovereign immunity is the rule and a public entity may be held liable only if there is a statute subjecting it to civil liability."].)

In their operative complaint, appellants cited as a statutory basis for liability Vehicle Code section 17001, which provides: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." Under this statute, a public entity is liable for injuries proximately caused by the negligent operation of a police vehicle during pursuit of a suspected law violator, except when the conditions for immunity under section 17004.7 are

12

met. (*Moreno v. Quemuel* (2013) 219 Cal.App.4th 914, 919; *Lewis, supra,* 93 Cal.App.4th at p. 123.)[4]

Appellants alleged in their complaint that Garcia so negligently operated a City-owned vehicle in the course and scope of his employment by the City that he caused the collision with appellants' vehicle that injured them. In his declaration in support of the summary judgment motion, Garcia admitted that while he was on patrol for the City, his "patrol vehicle struck the rear driver's side of [appellants'] vehicle" during his pursuit of a third vehicle. He did not deny that he negligently operated his vehicle or that the collision injured appellants, and the City submitted no other evidence to refute appellants' allegations. We determined earlier Vehicle Code section 17004.7 does not apply, because the collision that injured appellants did not involve the vehicle operated by the suspected law violator who was being pursued by Garcia. Hence, on the record presented on the summary judgment motion, the City was liable under Vehicle Code section 17001 and did not have sovereign immunity under Government Code section 815, subdivision (a). The trial court erred in ruling otherwise.

Our conclusion the trial court erred by granting the motion for summary judgment, because the City did not sustain its initial burden on the motion to prove the immunity defense it asserted, requires reversal of the

---

[4] The City acknowledges the liability created by Vehicle Code section 17001, but argues it is not liable under that statute because section 17004.7 "grant[s] public entities immunity from liability [for] *a collision during an officer's pursuit of a suspect* when the Police Department has adopted and implemented appropriate vehicle pursuit training and policies." (Italics added.) As we explained earlier, however, the immunity does not apply to *any* collision that occurs during police pursuit of a suspected law violator. It covers *only* a "collision of a vehicle being operated by a fleeing suspect." (*Lewis, supra,* 93 Cal.App.4th at p. 128.)

judgment.  We therefore need not address appellants' claims of error that the summary judgment violated their Seventh Amendment right to a jury trial and the trial court judge was biased and corrupt.  We nevertheless advise appellants that it is a judge's duty to make a ruling when a party makes a motion; and a ruling against a party, even if erroneous, does not indicate either bias against that party or corruption.  (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219-1220; *Ryan v. Welte* (1948) 87 Cal.App.2d 888, 893.)  We further advise appellants that if they continue to use abusive and disrespectful language against the trial judge and the City's attorney such as that included in the briefs they filed in this court, their filings may be stricken and they may be held in contempt.  (*In re Buckley* (1973) 10 Cal.3d 237, 247-250; *Carpenter*, *supra*, 10 Cal.2d at p. 314; *In re White* (2004) 121 Cal.App.4th 1453, 1477-1478; *Ruby v. Superior Court* (1951) 104 Cal.App.2d 175, 177.)

III.

DISPOSITION

The City's motion to strike portions of appellants' opening brief is denied.  Appellants' "motion introducing existing evidence" is denied.  The judgment is reversed, and the matter is remanded with directions to the trial court to vacate the order granting the City's motion for summary judgment and to enter a new order denying the motion.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



O'ROURKE, J.


15