Filed 9/12/13  P. v. Ontiveros CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

**(Sierra)**

----

| | |
|---|---|
| THE PEOPLE, | C072538 |
| Plaintiff and Respondent, | (Super. Ct. No. CR02964X) |
| v. | |
| MARTIN VENTURA ONTIVEROS, | |
| Defendant and Appellant. | |

A jury found defendant Martin Ventura Ontiveros guilty of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a))[1] and driving while having 0.08 percent or more alcohol in his blood (*id*., § 23152, subd. (b)).  The jury found true an allegation that, within the previous 10 years, defendant had a prior felony conviction of driving under the influence (DUI) with injury.  (*Id*., §§ 23153, 23550.5, subd. (a)(2).) The jury also found true an allegation that, within the previous 10 years, defendant had three prior DUI convictions.  (*Id*., §§ 23152, 23153, 23550, subd. (a).)  The jury found

---

[1] Undesignated statutory references are to the Vehicle Code.

not true an allegation that defendant refused a peace officer's request to submit to and complete a chemical test. (*Id*., § 23577.) Defendant admitted allegations that he had a prior robbery conviction (former Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and had served a prior prison term (Pen. Code, § 667.5, subd. (a)).

Defendant was sentenced to state prison for seven years, consisting of twice the upper term of three years for the DUI plus one year for the prior prison term.

On appeal, defendant contends his trial counsel rendered ineffective assistance by (1) failing to request bifurcation of his three prior DUI convictions; (2) if that request were unsuccessful, failing to stipulate to the allegations' truth so that the jury would not learn about the priors; and (3) failing to seek exclusion of his statements about his prior convictions and the fact he had served a prior prison term for felony DUI. We shall affirm.

## FACTUAL BACKGROUND

### *Prosecution Case-in-chief*

On July 5, 2012, at 6:25 p.m., Sierra County Sheriff's Deputy Matthew Boyd was driving a marked patrol car northbound on Highway 49 between Downieville and Sierra City. Deputy Boyd was driving behind a small red sport utility vehicle (SUV) driven by defendant. The SUV "crossed over the double yellow line by the entire length of the car and returned to his lane as if it was cutting a corner." Deputy Boyd followed the SUV about a "mile, mile and a half" and then turned on his headlights (but not his emergency lights). Defendant activated his right turn signal and started trying to pull over. But then he deactivated the turn signal and continued down the road. On three successive occasions, defendant activated his right turn signal and started to pull over but then made minor corrections within his lane and continued down the road.

2

Eventually, Deputy Boyd activated his emergency lights and defendant stopped at a large turnout. Deputy Boyd asked defendant for his driver's license, and defendant said he did not have one. When defendant started to get out of the SUV, Deputy Boyd "immediately noticed a heavy odor of alcohol emitting from his breath and person." Defendant was barefoot and took slow deliberate steps when he got out of the SUV.

Deputy Boyd asked defendant whether he had been drinking; defendant answered in the affirmative. Defendant said he had consumed approximately four beers at Bullards Bar Dam in Yuba County and one beer more recently in the SUV. Defendant's eyes were red, watery, and bloodshot; and he continually smelled of alcohol.

Defendant explained that he did not have a driver's license because he "had a DUI in the past" and had not paid off approximately $8,000 in fines.

Deputy Boyd conducted field sobriety tests to determine defendant's level of intoxication and his ability, or inability, to drive. During the tests, Deputy Boyd asked defendant three or four times whether he would like to stop to get his shoes from the SUV; each time defendant declined.

Deputy Boyd performed a horizontal gaze nystagmus (HGN) test, which requires the subject to move his eyes, not his head, as he follows the movement of the officer's finger. At a point in the test, the subject's eyes will begin to bounce back and forth. Deputy Boyd carried a card that correlates the point at which the eyes begin bouncing to the amount the subject had to drink. According to the card, defendant's blood-alcohol content was 0.20 percent. Deputy Boyd did not bring the card to the trial.

Deputy Boyd also performed a "Romberg balance standing test" that required defendant to close his eyes, tilt his head back, and count to 30. During the test, defendant swayed back and forth two inches, which suggested he was under the influence of an alcoholic beverage.

3

Deputy Boyd offered to do a preliminary alcohol screening (PAS) test, but defendant refused multiple times to do the test. The last time he refused to perform the test, defendant stated "he would be over the limit and the test would not be necessary."

Based on his training and experience, as well as defendant's general demeanor, the strong smell of alcohol, and all the field sobriety tests, Deputy Boyd believed that defendant was too intoxicated to continue driving.

Deputy Boyd handcuffed defendant and placed him in the back of the patrol car. Then Deputy Boyd spoke with defendant's passenger, Michelle Killian, who agreed to take a PAS test. She tested as 0.02 percent blood alcohol, which is "way under the limit." She was allowed to drive the SUV, and she followed the patrol car back to the sheriff's office.

Deputy Boyd tried to test defendant's breath using an intoxilyzer. A person performing this test must blow air into the machine for at least one-half second and must deliver 1.2 liters of air. If the person performs as required, the machine will process the test and then ask for a second breath test. If the person does not do as required, the machine asks that the test be repeated. The machine determines the percent of alcohol in a person's blood by measuring grams of alcohol per 210 liters of breath. (*People v. Williams* (2002) 28 Cal.4th 408, 411, fn. 1 (*Williams*).)

Defendant attempted to perform the breath test 12 to 14 times. On several attempts he failed to blow sufficient air into the machine. On some attempts he appeared deliberately to inhale small, insufficient amounts of air before exhaling into the machine. On other attempts he appeared to manipulate his tongue in order to limit the flow of air into the machine. The machine reported that one attempt was successful and the others were insufficient or in error.

The successful test, at 7:07 p.m., showed a blood-alcohol level of 0.22 percent. Based on this reading, a criminalist opined that defendant was too impaired to safely operate a motor vehicle. Defendant's blood-alcohol level at 6:00 p.m., prior to his arrest, would have been 0.23 percent. In order for someone of defendant's size to have a blood-alcohol level of 0.22 percent, that person would have to have consumed approximately 15 shots of 86-proof alcohol or 15 bottles of beer.

Deputy Boyd wanted to get another breath sample, but defendant stated that he could not give another sample. Defendant also did not submit to a blood test. For reasons of employee safety, the clinic that does blood tests for Sierra County will not force a blood test upon a subject who does not consent to the test.

Defendant became quite upset when Deputy Boyd told him that, if he had multiple prior DUI's, it "would be quite some time" before defendant was released. Defendant was upset because he wanted to go fishing.

When Deputy Boyd brought defendant to the jail, correctional officer Gary McFarland observed that defendant's speech was a bit slurred, his eyes were a bit bloodshot and watery, and his breath smelled of alcohol. McFarland had been trained to recognize people who are under the influence of alcohol, and he has dealt with "hundreds and hundreds" of people who are under the influence.

*Defense*

Michelle Killian, the girlfriend of defendant, testified for the defense. About 2:00 to 2:30 p.m., she picked up defendant to go fishing. The two left Oroville and she drove them to Lake Francis. The trip took one hour and 20 minutes. They each drank four alcoholic beverages and stayed at Lake Francis for three to three and a half hours.

Killian testified that she and defendant left Lake Francis at "four" or 4:30 p.m. They were headed to Gold Lake. Killian was not familiar with the territory so she let

5

defendant drive, even though she knew he did not have a license. They did not stop at Bullards Bar Dam.

Killian testified that there had been something wrong with the alignment mechanism of her SUV. Defendant said he could "make it so easier on" the SUV by "straighten[ing] out" the tight turns on the winding road. Killian did not recall the SUV going "all the way over the center line, the whole width of the car." Instead, she remembered the two driver's side tires going over the center line.

Killian testified that defendant has a back problem. She recalled that the officer had asked defendant when he last drank a beer. Defendant replied that he "was just about ready to crack one open." Killian clarified that she does not let anyone drink and drive in her car.

Killian claimed her SUV smelled like beer because she had placed the empty cans from Lake Francis in the back of the SUV for recycling and she had collected additional cans.

Killian testified that defendant was arrested when he refused to take the PAS test at the side of the road. The officer gave Killian a breathalyzer test, and she was allowed to drive her SUV. Killian testified that she and defendant had consumed the same quantity of beer at Lake Francis.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Defendant contends his trial counsel rendered ineffective assistance when he failed to request bifurcation of his three prior DUI convictions. He further contends trial counsel was ineffective for having failed to stipulate to the allegations' truth so that the jury would not learn about the priors. Defendant also claims trial counsel rendered ineffective assistance by failing to seek exclusion of his statements about his prior

6

convictions and the fact he had served a prior prison term for felony DUI. In a separate argument, defendant claims trial counsel's ineffective assistance was prejudicial. This last claim is dispositive.

### A. *Background*

Prior to trial, the prosecutor stated that he anticipated submitting some prior convictions in his case-in-chief. The prosecutor identified DUI priors from Sutter, Shasta, and Butte Counties. The prosecutor did not seek to admit a Fresno County prior conviction of armed robbery or a Sacramento County prior conviction of burglary during the case-in-chief.

Defense counsel did not seek to bifurcate the trial of the DUI priors. The trial court found the DUI priors were admissible. The jury received a redacted version of the information that did not include the prison term and strike allegations.

In his opening statement, the prosecutor told the jury that defendant was charged with felony DUI because he had "three prior convictions within 10 years," and because he had "a prior felony [DUI] within 10 years."

During trial, Deputy Boyd testified that defendant said he did not have a driver's license because he had not paid off about $8,000 in fines from a DUI case. Deputy Boyd also recounted defendant's statement that he "had a prior DUI" and had been through the process before. Deputy Boyd further recalled that defendant had become less cooperative when he was told he would not be released due to his "multiple DUI's."

In his opening summation, the prosecutor argued that the third prong of his case was "prior intoxication." He discussed defendant's three prior convictions, including the conviction of DUI with injury that resulted in a prison commitment of three years eight months.

7

In his summation, defense counsel argued, "don't let your consideration of the prior convictions that have been mentioned here, don't let that cloud affect your analysis of the facts of this case. They have to rest on their own laurels. [¶] So, you know, it is a bit prejudicial to hear about prior DUI's, and assuming because he has priors, he must be guilty in this case. Don't allow yourself to do that."

The trial court instructed the jury that it could "[c]onsider the evidence presented on these [DUI prior] allegations only when deciding whether the defendant was previously convicted of the crimes alleged. Do not consider this evidence for any other purpose." (CALCRIM No. 2125.)

### B. Analysis

" ' "In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " ' " (*People v. Salcido* (2008) 44 Cal.4th 93, 170 (*Salcido*).) "Finally, 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [set forth above] or even to address both

8

components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' " (*People v. Cox* (1991) 53 Cal.3d 618, 656.)

Defendant has not shown any reasonable probability that, but for admission into evidence of the prior convictions and prison term, the result of the proceeding would have been different.  (*Salcido*, *supra*, 44 Cal.4th at p. 170.)  The evidence showed that defendant had been driving the SUV when it crossed over the double yellow line by the entire length of the car.  Defendant's eyes were red, watery, and bloodshot, and he emitted a heavy odor of alcohol from his breath and person.  Defendant admitted to Deputy Boyd that he had been drinking, most recently a beer inside the SUV he had been driving.

Defendant's conduct during the subsequent intoxilyzer test raised an inference of his consciousness of his guilt.  Defendant attempted to perform the breath test 12 to 14 times.  On several attempts he failed to blow sufficient air into the machine.  On some attempts he appeared deliberately to inhale small, insufficient amounts of air before exhaling into the machine.  On other attempts he appeared to manipulate his tongue in order to limit the flow of air into the machine.

The intoxilyzer also provided direct evidence of defendant's guilt.  The machine reported that one of defendant's multiple efforts to take the test was successful.  This test showed that defendant had a blood-alcohol level of 0.22 percent, which is almost three times the legal limit.

Defendant counters that "there was only one breath test, when two breath tests are required under title 17 of the California Code of Regulations."  In other words, we should ignore the one valid test because his subterfuge invalidated the others.  The argument earns high marks for chutzpah.  (E.g., *Lewis v. County of Sacramento* (2001)

9

93 Cal.App.4th 107, 113.)  As defendant concedes, the lack of a second test as required by the regulation does not make the existing test inadmissible.  (*Williams*, *supra*, 28 Cal.4th at p. 417.)  Defendant offers no reason to believe the one existing test was inaccurate.

Finally, there was evidence that, in order for a person of defendant's size to have a blood-alcohol level of 0.22 percent, he would have to have consumed approximately 15 shots of 86-proof alcohol or 15 bottles of beer.

Thus, there was abundant evidence that defendant drove the SUV while under the influence of alcohol and with a blood-alcohol level over 0.08 percent.  There is no reasonable probability that the result would have been any different had defendant's admissions and prior convictions been excluded.

We need not join the parties' debate whether defense witness Killian was credible with respect to the timing of the duo's travels to Lake Francis and Gold Lake.  Killian's testimony about how much she and defendant consumed was problematic at best.  Killian testified that they each drank four alcoholic beverages during the same time frame, even though their respective breath tests showed wildly divergent amounts of alcohol in their blood.  Even if Killian's testimony as to the timeline was credible, reasonable jurors could conclude her testimony about how much defendant drank that day was not.  Defendant's claim that he "presented a plausible defense based on his girlfriend's testimony that he was not under the influence" has no merit.

In sum, defendant has not shown any reasonable probability of a more favorable outcome had his trial counsel sought to exclude his prior convictions and his statements acknowledging those convictions.  (*Salcido*, *supra*, 44 Cal.4th at p. 170.)  Any deficient performance by trial counsel could not have been prejudicial.

10

## II.  Verdicts

We next consider an anomaly in the rendition and recordation of the jury's verdicts.  The information alleged four counts of violation of section 23152:  two under subdivision (a), and two under subdivision (b).  One subdivision (a) count and one subdivision (b) count alleged a prior *felony* conviction within the meaning of section 23550.5.  The other subdivision (a) count and subdivision (b) count alleged *three separate prior convictions* within the meaning of section 23550, subdivision (a).

The jury did not receive or return verdict forms for four separate counts of violation of section 23152.  Rather, the jury returned *one* verdict form for guilty of section 23152, subdivision (a); *one* verdict form for guilty of section 23152, subdivision (b); *one* verdict form finding the section 23550.5 enhancement true, and *one* verdict form finding the section 23550 enhancement true.  None of the verdict forms identified the particular count to which it related.

At sentencing, the trial court indicated its intent to impose sentence on "count 1" and to stay sentence on "counts 2, 3, and 4" pursuant to Penal Code section 654.  The trial court stated that defendant had been charged under both subdivisions (a) and (b) of Vehicle Code section 23152, "[b]ecause of high blood-alcohol level."  The court added that "two additional counts [had been] charged because in this particular case the underlying offenses are apparently from two separate reasons."  Neither court nor counsel appear to have noticed that the jury had received and returned verdict forms for just *two* counts of violation of section 23152.  The abstract of judgment conforms to the oral pronouncement of sentence.

Because the jury returned verdicts for just two counts, not four, the trial court erred by imposing sentence on four separate counts.  This is so even though the court subsequently stayed three of the counts.  We modify the judgment by striking counts three and four and direct the trial court to prepare an amended abstract of judgment.

11

## DISPOSITION

The judgment is modified by striking defendant's convictions on counts three and four.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.


                BUTZ    , Acting P. J.


We concur:


    MAURO   , J.


    MURRAY   , J.